316 So.2d 115 (1975)
STATE of Louisiana
v.
George L. NATTIN, Sr.
No. 55955.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*116 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., Henry N. Brown, Jr., Asst. Dist. Atty., for plaintiff-appellant.
James B. Wells, Bossier City, for defendant-appellee.
SANDERS, Chief Justice.
In November of 1974, the District Attorney of Bossier Parish filed a bill of information against George L. Nattin, Sr., charging him with public bribery in violation of LSA-R.S. 14:118. In January of 1975, on a defense motion, the district court quashed the bill of information filed against defendant. The State has appealed the trial court's ruling. See LSA-C.Cr.P. Art. 912.
The background facts may be briefly stated. In June of 1973, the Bossier Parish Grand Jury was investigating public contract fraud and bribery. The District Attorney issued a subpoena for the Mayor of Bossier City, George L. Nattin, Sr. On June 26, 1973, Nattin appeared, had his rights explained to him, and elected to testify.
Subsequently, in July of 1973, the Grand Jury returned indictments charging George L. Nattin, Sr., Waylan Nattin, Sammy Teutsch, and R. D. Methvin with several counts of public bribery. In April of 1974, Methvin was tried and found guilty. He agreed to turn State's evidence in return for the State's recommendation that he be given a suspended sentence.
In November of 1974, the District Attorney dismissed the indictments. He then filed a bill of information charging George L. Nattin, Sr., and others with public bribery.
On motion of the defendant, the trial court ruled that the bill of information was invalid and violated the defendant's constitutional rights set forth in Article XIX, Section 13 of the Louisiana Constitution of 1921.
Article XIX, Section 13 of the Louisiana Constitution of 1921 provides:
"Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not *117 afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."
In almost identical language, LSA-R.S. 15:468 also provides:
"Any person may be compelled to testify in any lawful proceeding against another charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony."
The basic issue under the cited provision is whether the defendant was "compelled to testify" about bribery in view of his election to testify before the Grand Jury and his waiver of constitutional rights. If so compelled, his testimony cannot be used against him as a basis for a bill of information.
Recently, in State v. Wallace, La., (March 31, 1975), we held that a bribery indictment against a defendant is valid when he is accorded the privilege of not testifying but makes an "informed decision" to waive his rights and to testify before the Grand Jury. We concluded that under these circumstances, the testimony is not compelled.[1]
In the present case, before the defendant testified, the District Attorney explained the defendant's rights to him in a colloquy made part of the record.[2] After advising *118 him that he was a "prospective defendant," the District Attorney stated:
"We are asking everybody to read and attempt to understand the privilege against self incrimination and having understood we are requesting you to waive that privilege. This privilege means simply that if you desire you can elect to claim the privilege not to incriminate yourself granted both by the State and the Federal Constitution, and that will simply mean that we are not free to ask you any questions or you do not have to answer anything in here. Of course if you waive it anything that you may say in here can be used against you and with that understanding we would then ask you if you want to testify or make a statement in here to us, if so, then you can sign that waiver."
The center of controversy is whether this statement is adequate to remove the compulsion of the subpoena and to allow the witness an election as to whether or not to testify. After reviewing it, we are convinced that the words used were sufficient to advise the defendant that the State would not compel his testimony, but that he himself should make the decision whether to testify.
It is true, as defendant asserts, that the State had the authority to compel him to testify. In the framework of the present case, however, the essential question is not what the State had the authority to do, but what it actually did. The State's position, communicated to the defendant, is quite clear: "[I]f you desire you can elect to claim the privilege . . . and that will simply mean that we are not free to ask you any questions or you do not have to answer anything in here." In our opinion, defendant made an informed decision to testify, knowing that he was not required to do so.
The defendant relies upon State v. Callahan, 247 La. 525, 172 So.2d 668 (1965) and State v. Smalling, 240 La. 887, 125 So.2d 399 (1960), on rehearing, 240 La. 915, 125 So.2d 409 (1960). These cases are inapposite.
In State v. Smalling, supra, the Court found that the defendant was compelled to testify before the Grand Jury and that the bills of information filed against him were based on his testimony.[3] See State v. Wallace, supra.
In State v. Callahan, supra, the State conceded that the defendant was compelled to testify and argued only the issue of whether or not the indictment was based on defendant's testimony.
Since defendant was not compelled to testify, we conclude that the bill of information should be sustained. Hence, we do not reach the State's alternative argument that the bill of information was based entirely upon independent evidence and not upon defendant's Grand Jury testimony.
For the reasons assigned, the ruling of the trial court quashing the bill of information is reversed, and the case is remanded for further proceedings according to law and consistent with the views herein expressed.
DIXON, J., dissents.
CALOGERO, J., dissents.
DIXON, Justice (dissenting from the refusal to grant a rehearing).
In Louisiana there is no right to refrain from testifying against oneself in a bribery case. Anyone may be compelled to testify. Art. 19, § 13, La.Const. of 1921:
"Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed *119 the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."
(See also R.S. 15:468).
Nattin was subpoenaed to testify before the grand jury. He was erroneously advised by the district attorney about a right to refrain from testifying against himself an erroneous warning about a nonexistent right. He was never told that Louisiana law compelled him to testify in the bribery investigation before the grand jury, and that the compelled testimony could not be used against him.
NOTES
[1] The Court concluded that all but one of the defendants "made an informed decision to waive their rights against self incrimination and to testify before the grand jury. The decision to testify was theirs. They were not compelled."
[2] The complete colloquy reads as follows:

DISTRICT ATTORNEY: "You have had a copy of this [apparently referring to waiver form] given to your attorney. This is a waiver of the privilege against self incrimination as a person subpoenaed to appear here and perhaps as a prospective defendant under this area of allegations of wrong doing by Bossier public officials."
DEFENDANT: "Yes, sir."
DISTRICT ATTORNEY: "We are asking everybody to read and attempt to understand the privilege against self incrimination and having understood we are requesting you to waive that privilege. This privilege means simply that if you desire you can elect to claim the privilege not to incriminate yourself granted both by the State and the Federal Constitution, and that will simply mean that we are not free to ask you any questions or you do not have to answer anything in here. Of course if you waive it anything that you may say in here can be used against you and with that understanding we would then ask you if you want to testify or make a statement in here to us, if so, then you can sign that waiver."
DEFENDANT: "Mr. Marvin, let me see if I understand. As I understand I do not have to say anything that would incriminate me, that anything I may say may be used against me. Do I have the right afterwardsor if I sign this I have no rights afterwards to consult with my attorney?"
DISTRICT ATTORNEY: "You can consult with your attorney from time to time about any specific areas of inquiry, but you are not privileged to have your attorney in the Grand Jury room."
DEFENDANT: "I understand, sir."
DISTRICT ATTORNEY: "Now, you may want to consult with your lawyer at this stage of the game because there is a law to the effect that once you elect to testify before a Grand Jury or investigative body that you can not piecemeal the privilege. In other words, some questions in one area you may notif you start answering some question in one arealet me use the illustration of the Louisiana Soil Stabilization Company. Once you start answering questions in that area you cannot refuse to answer other questions in that same area."
DEFENDANT: "Yes, sir, I understand."
DISTRICT ATTORNEY: "And if you well, rather than me advising you generally as to the law I think you should get that advice from your own counsel like we said the other day."
DEFENDANT: "Yes, sir. I think I understand, sir."
DISTRICT ATTORNEY: "Okay. Now, do you wish to sign the waiver?"
DEFENDANT: "Yes sir. (Witness signs waiver)"
[3] Smalling's second appearance before the Grand Jury was the result of a subpoena, and he signed no waiver of his rights.