633 So.2d 225 (1993)
STATE of Louisiana
v.
Julian LAZARUS and Mary Ann Lazarus.
No. 92 KW 1774.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
*226 Reginald T. Badeaux, III, Covington, for State.
*227 Gary W. Bizal, New Orleans, for Mary and Julian Lazarus.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
This court granted certiorari to consider relators' misdemeanor convictions for cruelty to animals. Mary Ann and Julian Lazarus (relators) operated a cattery at their Magnolia Forest Subdivision residence in St. Tammany Parish, Louisiana, where they raised purebred Persian and Himalayan cats. After the execution of a search warrant based on affidavits claiming the existence of inhumane conditions at the cattery, ten cats (out of approximately 100) were removed from the premises. Relators were charged in a single bill of information with ten counts of violating Louisiana Revised Statute 14:102.1 (cruelty to animals). The trial court convicted them as charged and imposed a sentence of six months in the parish jail on each count. The sentences were suspended, and several conditions of probation were imposed.[1] Relators claim the trial court erred by denying their motion to suppress evidence obtained by an invalid search warrant. They urge three errors concerning the search warrant:
(1) the warrant was not based on probable cause;
(2) evidence was seized by a private individual rather than a peace officer; and
(3) intentional misrepresentations by the affiant rendered the warrant invalid.
Lynn Moore, director of the St. Tammany Humane Society (Society), testified her office received a call from a citizen who was concerned about the cats in relators' house. She spoke to five people who gave affidavits about what they had seen in the house in the recent past. Based on the information contained in those affidavits, she applied for a search warrant for the residence/cattery. The search warrant listed Moore as affiant, as well as a person named Jeff Dorson. However, Moore testified she actually had not observed any illegal activities at that location prior to the execution of the warrant, and, to her knowledge, Dorson also had not observed illegal activities at the cattery.
The affidavit states in part as follows:
It is believed that there are approximately 200 cats housed in severely inhumane conditions, many of them alleged to suffer from diseases inc. but not limited to ulcerated eyes, feline leukemia, herpes, ringworm, salmonella, as well as falsification of health certificates and illegal shipping of animals.
which is (are) believed to be secreted or concealed, and such probable cause is based upon the following:
sworn statements from 2 notarized former employees (sic) (see attached) who have been there in the near recent past, which verify the inhumane conditions and alleged falsified sales of animals.
The affidavit supporting the search warrant was signed on February 8, 1991. Moore testified the information was provided by two former employees of the cattery, Caren O'Brien and Dianne Wiley; she stated neither of the women was a veterinarian. She further stated she did not attempt to verify the information before obtaining the warrant and had no way of knowing at the time she obtained the statements if they were true. The Society became involved in the investigation because it had received two complaints about the cats and because another organization requested the Society's involvement after it received "a number" of complaints. On behalf of the Society, she asked for "restitution" of $10,350.00 for boarding and nursing expenses, $2,226.00 for veterinary care, and $269.12 for videotapes and photographs of the cats.
Janice Breaux testified she is an animal caretaker with bachelor and master degrees in animal science. She is a board member of and does volunteer work for the Society, and she is an animal cruelty officer, commissioned by and sworn in by the St. Tammany Parish Police Jury. She was part of the team that executed the search warrant, and *228 she was in charge of videotaping the cats and their conditions. She claimed that, as a commissioned animal cruelty officer, she has the same status as a deputy except she does not arrest people or carry a gun.
Dianne Wiley testified she worked for relators for approximately six weeks between August and October 1989. When relators objected to the relevancy of her testimony (since the offenses occurred almost 18 months later), the State claimed her testimony was relevant to show the mistreatment of the cats was of long-standing duration. The court permitted her to testify. She claimed that relators kept approximately 200 cats and that the smell was overwhelming. She indicated the premises were infested with roaches and the cats were not properly medicated.
Wiley claimed she came forward with information for the warrant after receiving a telephone call from O'Brien. She agreed to meet O'Brien, Moore, and Breaux at the police station, where she prepared the affidavit attached to the search warrant. Although he was listed as an affiant, Jeff Dorson was not actually at the police station at the time Wiley prepared her affidavit.
O'Brien testified she worked for relators for about five years, until a few days before the affidavits were prepared. During the fall of 1990 she was out for several months with pneumonia. She returned to work around the end of January or the beginning of February 1991. She claimed the conditions at relators' house at the time she left their employment were "deplorable." Relators stated she had been fired and characterized her testimony as that of a disgruntled former employee.
After the State's presentation of evidence, defense counsel argued the motion to suppress. At that time, the State contended that although "there might be some technical glitches in the application for the warrant," the good faith exception applied. The State conceded Wiley's affidavit was "kind of stale" but claimed the court should have known from O'Brien's testimony that she had only recently left relators' employment at the time the affidavit was prepared; therefore, that information could support the warrant. The court ruled the warrant (issued by a different judge) was based on "reasonable cause" and denied the motion to suppress. The court noted that frequently affidavits in support of search warrants reflect the information is provided by an unnamed informant; herein, since the informants were named, the issuing magistrate could have relied on the information contained in at least O'Brien's affidavit.

LACK OF PROBABLE CAUSE
In their first and third arguments, relators contend the warrant was defective because it was not based on probable cause and it contained material misrepresentations by the affiant, Lynn Moore. In finding the issuing magistrate had "reasonable cause" to support the warrant, the trial court cited Louisiana Revised Statute 14:102.3, which sets forth special requirements for obtaining search warrants in animal cruelty cases. It provides as follows:
If the complaint is made, by affidavit, to any magistrate authorized to issue search warrants in criminal cases, that the complainant has reason to believe that an animal has been or is being cruelly treated in violation of R.S. 14:102.1, in any building or place, such magistrate, if satisfied that there is reasonable cause for such belief, shall issue a search warrant to any law enforcement officer authorized by law to make arrests for such offenses, authorizing any such officer to make a search of said building or place, and to arrest any person found violating R.S. 14:102.1. Said warrant may also authorize said officer to seize any animal believed to be cruelly treated and to take custody thereof. This section shall not be construed as a limitation on the power of law enforcement officers to seize animals as evidence at the time of the arrest.
(Emphasis added.)
Pretermitting the issue of whether constitutional provisions requiring that search warrants issue only on a finding of probable cause can be legislatively restricted, here it is clear the affidavits did not even support a finding of reasonable cause to believe the animals were being cruelly treated, since the affidavit supporting the warrant (Moore's) *229 bears no real indicia of credibility. In its response, the State concedes the statute is "admittedly awkward and subject to confusion" but contends its language encompasses the definition of "probable cause."
The State apparently contends the following factors establish the reliability of the information: Moore was the Director of the Society for one year prior to the incident; she has been involved with animals for over 20 years; and she is well informed about animal abuse and the handling of complaints. The State does not offer any information concerning the credibility of the informants.
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La. Const. art. I, § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Tilley, 525 So.2d 716, 718 (La.App. 1st Cir.1988).
The probable cause standard is a practical, nontechnical conception. Only the probability, and not a prima facie showing, of criminal activity is required. A magistrate's determination of probable cause should be paid great deference by reviewing courts. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Tilley, 525 So.2d at 718.
A magistrate must decide whether an affidavit reveals a fair probability that contraband will be found at a particular location. See State v. Kyles, 513 So.2d 265, 271 (La. 1987), cert. denied, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988). The affidavit, interpreted in a common sense and realistic manner, must contain information which would warrant a person of reasonable caution to believe the articles sought are located at the place to be searched.
Herein, Moore's affidavit states her information was provided by two former employees who had been in the house recently. However, Dianne Wiley's affidavit indicates she worked at the cattery between August and October 1989; therefore, it cannot support a finding of probable cause to believe an offense was being committed on the premises in February 1991. The affidavit of O'Brien states she was employed by relators "for approximately the last five years," and she set forth a number of serious allegations. However, even her affidavit does not refer to a specific time period nor give specific indications of the type of evidence that might be found at the time the warrant was executed.
During the suppression hearing, the State argued the judge should have known from O'Brien's testimony that she had been in the house recently. However, the affidavit should stand for itself and should contain all information necessary for issuance of the warrant. Normally a reviewing court is not permitted to go outside the "four corners" of the affidavit; the only exception is where there are inadvertent material omissions in the affidavit. See State v. Morris, 444 So.2d 1200, 1202 (La.1984). As a general rule, testimony during the hearing can be examined by a reviewing court determining whether suppression should have been ordered, but it cannot supplement the affidavit.
The State also argued that, even if the affidavit is insufficient, the good faith exception of United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable. In Leon, the United States Supreme Court held the exclusionary rule should not be applied so as to bar the use, in the prosecution's case in chief, of evidence obtained by officers acting in an objectively reasonable good faith reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be invalid.
The Leon court enumerated four instances in which suppression remains an appropriate remedy: (1) where the magistrate or judge was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned *230 his detached and neutral judicial role; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. United States v. Leon, 468 U.S. at 923, 104 S.Ct. at 3421; State v. Tilley, 525 So.2d at 720.
Relators forcefully argue the affidavit contained evidence the affiant (Moore) knew was false. For example, Moore misrepresented that Wiley was a former employee who had been in the residence in the near recent past. Moore also stated Dorson was an affiant when he did not appear before the issuing judge. In its response brief, the State simply claims relators cannot challenge the credibility of the affiant's informant by a motion to suppress.
While the State is correct in its contention that the credibility of the informant cannot be challenged by a motion to suppress, herein the affidavit itself is so lacking in indicia of probable cause that it fits under the third Leon exception. Moore's affidavit (on which the warrant actually was based) contains nothing except the allegation that there were sick cats at the residence. Wiley's affidavit should not have been attached and probably should have been stricken by the magistrate, since it is not even purportedly based on recent information. O'Brien's affidavit contains conclusory statements; she did not reference specific facts upon which a magistrate could conclude that relevant evidence could be found. This error as urged by relators has merit.

SEIZURE BY UNAUTHORIZED PERSONS
In relators' second argument, they contend the evidence (the ten cats) was not seized by law enforcement officers. Relators allege Moore and Breaux are essentially animal rights activists and not law enforcement officers and they urge that Moore and Breaux are not "authorized by law to make arrests for such offenses."
Louisiana Revised Statute 3:2391 provides as follows:
Whenever, in any incorporated city or town or in any parish, a corporation for the prevention of cruelty to animals shall be organized, the mayor of the city or town and the police jury of the parish, respectively, as the case may be, shall appoint and commission as special police officers such agents as the corporation for the prevention of cruelty to animals may nominate; and agents being so commissioned shall have the usual power of policemen and peace-officers. No city, town, or parish shall be liable hereunder for any compensation to the special officers, and the police force of all incorporated cities and towns in the State shall aid any such corporation, its members or agents, in the enforcement in its respective locality of all laws enacted for the protection of dumb animals.
(Emphasis added.)
This provision was originally enacted in 1888. The prudence of granting such authority to private individuals untrained in constitutional law is questionable. For example, Moore apparently believed it was unnecessary to attempt to obtain corroboration of the information in the affidavits on which her affidavit and ultimately the warrant were based. Nevertheless, Breaux testified she was duly commissioned, and, since relators did not attempt to traverse her commission, she was authorized to enter the premises and seize the cats.
We note, however, that although Breaux's qualifications as a peace officer were established, the return on the search warrant was signed by Moore. Moore, as the director of the Society, could have been commissioned as a peace officer, but there is no indication in this record that she was acting in any capacity other than a private citizen. This argument also has merit.
Accordingly, we find the evidence upon which these convictions were based was unlawfully seized. We conclude that, under the particular facts presented herein, the search of relators' residence was unreasonable and, *231 therefore, the trial court erred in denying their motion to suppress. Accordingly, relators' convictions and sentences are vacated, the trial court's ruling on the motion to suppress is reversed, and this case is remanded to the trial court with instructions to enter an order granting the motion to suppress.
CONVICTIONS AND SENTENCES VACATED; RULING ON MOTION TO SUPPRESS REVERSED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Relators had also been charged with violating specific zoning ordinances of St. Tammany Parish. The trial court dismissed these charges.