698 So.2d 972 (1997)
STATE of Louisiana
v.
Wayne AMATO.
No. 96 KA 0606.
Court of Appeal of Louisiana, First Circuit.
June 30, 1997.
Rehearing Denied September 23, 1997.
*977 Doug Moreau, District Attorney, James Murray, Asst. District Attorney, Baton Rouge, for Appellee, State.
Sam J. D'Amico, Baton Rouge, for Defendant/Appellant, Wayne Amato.
*978 Before SHORTESS and LeBLANC, JJ., and TANNER[1], J. Pro Tem.
LeBLANC, Judge.
Defendant, Wayne Amato, was charged by grand jury indictment with public pay roll fraud, filing false public records, theft of an amount greater than $100.00 but less than $500.00, and unauthorized use of movables, violations of La. R.S. 14:138, 14:133, 14:67 and 14:68, respectively. He pled not guilty and was tried by jury. Upon motion of defendant, his first trial ended in a mistrial. After a second trial, the jury returned the following verdicts: (1) guilty as charged of filing false public records; (2) guilty of attempted public pay roll fraud; (3) not guilty of theft; and (4) not guilty of unauthorized use of movables. The trial court sentenced defendant to one year at hard labor on the conviction for attempted pay roll fraud and two years at hard labor on the filing false public records conviction. Each of the sentences was suspended. Defendant has now appealed, raising thirteen assignments of error. For the reasons assigned, we affirm in part and reverse in part.

Facts
In October of 1993, defendant was employed by the Department of Public Works (DPW) for the City of Baton Rouge/Parish of East Baton Rouge. At that time he was building a house in Zachary, Louisiana, to be used as his residence, and had taken annual leave on many occasions to work on it. When advised his annual leave was almost exhausted, he approached a supervisor and asked that he be allowed to use sick leave to complete the house. The supervisor declined the request on the basis that it was not permissible under departmental leave rules. Defendant made the same request to another supervisor, who he claims approved it, as long as defendant did not take more than four consecutive days of sick leave, which would require a medical excuse. Thereafter, defendant took sick leave for most of the work days between October 15 and December 15, 1993. He continued working on his house while on sick leave.

PUBLIC PAY ROLL FRAUD

Assignments of Error Nos. 13(c) and 13(d)
Defendant was convicted of attempted public pay roll fraud under La. R.S. 14:27 and 14:138 for using sick leave to build his house, when he was not actually sick. La. R.S. 14:138 provides, in pertinent part:
Public pay roll fraud is committed when:
(1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or pay roll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or pay roll;
* * * * * *
This article shall not apply in a situation where a bona fide public officer or public employee, who is justifiably absent from his job or position for a reasonable time, continues to receive his usual compensation or a part thereof.
(Emphasis added.)
On appeal, defendant argues he was not guilty of attempted pay roll fraud because the sick leave he took was earned by him as compensation for services he rendered to DPW in the past. Therefore, he argues the evidence was insufficient to sustain his conviction, since the state failed to prove payment was made or his name was carried on the public pay roll for services not actually rendered by him. This argument has merit.
We begin our discussion by observing Mr. Amato's conduct in utilizing sick leave to build his house when he was not ill was reprehensible and almost certainly a violation of departmental leave rules, probably giving rise to cause for disciplinary action. However, whether this conduct also constituted a criminal offense under La. R.S. *979 14:138 presents an entirely different question from that of whether he violated departmental rules regarding the fraudulent misuse of sick leave. In providing the rule for interpretation of criminal provisions, La. R.S. 14:3 provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
Thus, courts are not empowered to extend the terms of a criminal provision to cover conduct which is not included within the definition of the crime. State v. Gates, 572 So.2d 247, 249 (La.App. 1st Cir.1990). Based on the principal of lenity, any question as to the ambit of a criminal statute must be decided in favor of the defendant. Dunn v. U.S., 442 U.S. 100, 111-13, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979); State v. Piazza, 596 So.2d 817, 820 (La.1992). The principal of lenity developed on the basis that a person should not be criminally punished unless the law has provided fair warning of what conduct will be considered criminal. Piazza, 596 So.2d at 820.
The dispositive issue in the present situation is whether defendant received payment or was carried on the public pay roll "for services not actually rendered by himself." Defendant argues he earned the sick leave he took by the performance of past services.
Although we know of no criminal case where the issue has arisen, in the civil context, it is well-established that sick leave payments are a benefit which an employee has already earned by virtue of past services rendered.[2]See Young v. Western Elec. Co., Inc., 486 So.2d 962, 965 (La.App. 1st Cir. 1986); Naquin v. Texaco, Inc., 423 So.2d 31, 38 (La.App. 1st Cir.1982). In other words, an employee is not entitled to paid sick leave merely because he is sick, but because he has earned sick leave benefits by the performance of past services. Generally, if an employee is ill but has no accrued sick leave, he is not paid. An employee is paid sick leave benefits only after he has earned them by performing services for his employer. Thus, in the present case, defendant was paid sick leave benefits not merely because he purported to be ill, but because he had accrued sick leave by performing past services.
Despite the fact that defendant's use of sick leave to work on his house was fraudulent, it is difficult to reconcile the fact that he earned these sick leave benefits by performing past services with the requirement of La. R.S. 14:138 that the employee receive payment or be carried on the public pay roll for services not rendered by him. Under the terms of La. R.S. 14:138, it is not clear that such misuse of sick leave constitutes criminal conduct. In view of this doubt, and considering defendant's conduct in light of the principal of lenity, we are compelled to conclude it does not clearly fall within the ambit of public pay roll fraud as defined by La. R.S. 14:138. The state failed to prove all the elements necessary to sustain a conviction for attempted public pay roll fraud. Accordingly, defendant's conviction for attempted pay roll fraud is hereby reversed.

FILING FALSE PUBLIC RECORDS

Assignment of Error No. 1
In this assignment of error, defendant contends the trial court erred in overruling his motion to quash the grand jury indictment, which was based on the argument that his testimony before the grand jury was compelled.
Defendant was subpoenaed to appear before the grand jury. When he appeared on the date scheduled, he was given a letter informing him he was a target of the grand jury investigation. According to the state, defendant became a target only after testimony by other witnesses earlier that day implicated him. At the motion to quash, *980 defendant testified he was given the letter after he was already in the grand jury room. The letter itself notes only that it was "hand delivered", with no time indicated.
On appeal, defendant argues, notwithstanding the warnings he was given, he was compelled to appear before the grand jury because he was subpoenaed, and did not knowingly waive his right against self-incrimination. The only specific defect he alleges in the district attorney's advice of rights is the failure to advise defendant of the possibility of a court-appointed attorney if he could not afford one. He further contends he was confused and nervous, and did not really understand what being a "target" meant.
While defendant was clearly required by the subpoena to appear, this fact alone is not dispositive. Rather, the issue of whether he was compelled to give testimony against himself in violation of his constitutional rights is dependent upon whether or not he voluntarily waived his right against self-incrimination, after being adequately advised of his rights.
In State v. Nattin, 316 So.2d 115, 118 (La.1975), cert. denied, 423 U.S. 1089, 96 S.Ct. 882, 47 L.Ed.2d 100 (1976), the defendant was subpoenaed before the grand jury and was told that he was a "prospective defendant". The district attorney then advised him of the following rights:
`We are asking everybody to read and attempt to understand the privilege against self incrimination and having understood we are requesting you to waive that privilege. This privilege means simply that if you desire you can elect to claim the privilege not to incriminate yourself granted both by the State and the Federal Constitution[s], and that will simply mean that we are not free to ask you any questions or you do not have to answer anything in here. Of course if you waive it anything that you may say in here can be used against you and with that understanding we would then ask you if you want to testify or make a statement in here to us, if so, then you can sign that waiver.'
The Court noted that the dispositive issue was whether "this statement is adequate to remove the compulsion of the subpoena and to allow the witness an election as to whether or not to testify." State v. Nattin, 316 So.2d at 118. The Court held the district attorney's statement sufficiently advised defendant that the decision to testify was his and that the state would not compel his testimony.
In State v. Wallace, 321 So.2d 349 (La. 1975), the defendant, an attorney, was subpoenaed to appear before a federal grand jury, and his testimony later was used by a state grand jury to indict him for conspiracy to commit public bribery. The trial court sustained defendant's motion to quash the indictment. The state appealed, and the Louisiana Supreme Court initially concluded defendant was compelled to testify before the federal grand jury because he was not fully informed of his rights, i.e., the right to remain silent. However, upon rehearing, the Supreme Court changed its holding, and found defendant was not compelled to testify. The Court rejected defendant's argument that the fact he was subpoenaed meant his testimony was compelled, stating, "It cannot be said, therefore, that his [defendant] testimony was compelled merely because he was subpoenaed to testify." Wallace, 321 So.2d at 358. The Court found that defendant testified voluntarily after being informed of his right against self-incrimination, his right to leave the grand jury room at any time to consult with his attorney, and the fact that anything he said could be used against him.
In State v. Jones, 544 So.2d 1209, 1215 (La.App. 3rd Cir.1989), the defendant, who was advised that he was "possibly a target", that he had the right to remain silent and to have an attorney present, and who signed a waiver form listing these and other rights, was found to have testified voluntarily before the grand jury.
In the present case, the following colloquy occurred in the grand jury room between the assistant district attorney and defendant prior to defendant's testimony:
MR. MURRAY: State your full name for the record. MR. AMATO: Wayne Christopher Amato. MR. MURRAY: Mr. Amato, *981 do you understand that you have a fifth amendment right not to give evidence against yourself? Do you understand that right? MR. AMATO: No, I don'tI don'tI'm notI'm kind ofI'm not too MR. MURRAY: Okay. You understand you have a right to remain silent? MR. AMATO: Yes, sir. MR. MURRAY: Okay, You don't have to say anything that you believe will be incriminating, that would get you into trouble. MR. AMATO: Yes, sir. MR. MURRAY: You understand that? You have the right to have the presence of an attorney with you, to consult with you about the questions you're asked and the answers you are going to give. You are given that because you have been presented with a target letter of this grand jury. (Inaudible)MR. AMATO: Yes, sir. MR. MURRAY: Do you wish to have an attorney present? MR. AMATO: No, sir. MR. MURRAY: And you're waiving your right to have an attorney present now? MR. AMATO: Yes, sir. MR. MURRAY: It's up to you. We're not forcing you into this. It's your decision. If you want to have an attorney present, MR. AMATO: No sir. MR. MURRAY:We can let you go until you can get an attorney andMR. AMATO: No, sir. IMR. MURRAY:come back (inaudible). MR. AMATO: I don't needI don't want to have an attorney present. MR. MURRAY: (Inaudible). You have full understanding that whatever you say is going to be recorded first on the tapes here and it may be used against you by this grand jury and any evidence derived from whatever you say may be subsequently used against you in a criminal trial. Do you understand that? MR. AMATO: Yes, sir. MR. MURRAY: Okay. Understanding your fifth amendment rights, do you wish to answer questions propounded to you by this grand jury? MR. AMATO: Yes, sir.
As indicated from the above, defendant was advised of his right to remain silent, his right to have an attorney present, and the fact that anything he said could be used against him. Although defendant initially indicated he did not understand his right against self-incrimination, the assistant district attorney thereupon explained this right to him. Thereafter, defendant stated he did not want to have an attorney present, even though he was given the opportunity to leave and obtain one.
Given these circumstances, we find no error in the denial of defendant's motion to quash. Defendant was not compelled to testify against himself before the grand jury. He testified only after he was adequately advised of his rights, including the right against self-incrimination, and voluntarily waived them. This assignment of error is without merit.

Assignment of Error No. 2
Defendant contends the trial court erred in denying his motion to sever the four charges brought against him. He asserts the joinder was prejudicial because the state's evidence was presented in a confusing, disorderly fashion which did not permit the jury to keep the evidence of each offense segregated.
Under La.C.Cr.P. art. 493, two or more offenses may be joined if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided the offenses are triable by the same mode of trial. State v. Horton, 458 So.2d 445, 446 (La.1984). In this case, defendant was charged with public pay roll fraud, filing false public records, theft of an amount greater than $100.00 but less than $500.00, and unauthorized use of movables having a value in excess of $1000.00. Each of these offenses is a felony triable by the same mode of trial, i.e., a jury composed of six jurors, each of whom must concur to render a verdict. See La.C.Cr.P. art. 782; La. R.S. 14:138; La. R.S. 14:133 C; La. R.S. 14:67 B(2); La. R.S. 14:68 B.
Further, each of these offenses was connected to and arose out of the construction of defendant's house. The charges of filing false public records and public pay roll fraud stemmed from time defendant took off from work to build the house. The unauthorized use of movables charge concerned allegations that he used tools and equipment owned by *982 the City-Parish during the construction. The theft charge resulted from the purchase, without payment of sales tax, of appliances for the house. Thus, each of the charged offenses, although not similar in nature, was clearly connected to the building of defendant's house and constituted part of a common plan for its construction. Accordingly, joinder of the offenses in a single indictment was proper under La.C.Cr.P. art. 493. See Horton, 458 So.2d at 446; State v. Hudnall, 522 So.2d 616, 620 (La.App. 4th Cir.), writ denied, 530 So.2d 83 (1988).
Proper joinder in the indictment, however, does not complete the inquiry. A defendant properly charged with multiple counts in a single indictment may request a severance of the offenses for trial. Under La.C.Cr.P. art. 495.1, the court may order separate trials, or grant other relief, whenever it appears that the defendant or the state is prejudiced by the joinder. Horton, 458 So.2d at 446. Considerations in determining whether prejudice may occur include whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and the evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile. State v. Gaines, 633 So.2d 293, 297 (La.App. 1st Cir. 1993), writ denied, 93-3164 (La.3/11/94), 634 So.2d 839.
A motion for severance is addressed to the sound discretion of the trial court. Gaines, 633 So.2d at 297. When a defendant alleges prejudicial joinder, he has a heavy burden of proof. For an appellate court to reverse the trial court's ruling, there must be a clear showing of prejudice. Gaines, 633 So.2d at 297.
The Louisiana Supreme Court has held that a severance is not mandated simply because the offense would not be admissible at separate trials, if the defendant is not prejudiced by the joinder. State v. Celestine, 452 So.2d 676, 680 (La.1984). There is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, although such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury easily can keep the evidence of each offense separate in its deliberations. Celestine, 452 So.2d at 680; Gaines, 633 So.2d at 297.
In the instant case, the facts of the charged offenses were relatively simple. Although the evidence on the various counts was not kept strictly segregated in all instances, the evidence on each count was not complex in nature. Moreover, the trial court gave the following charge to the jury, making it clear defendant was charged with separate offenses, each requiring a separate verdict.[3]
I will tell you that you are not required to reach the same verdict on each charge. The charges are separate and should be considered by you separately in your deliberations. And the evidence presented on each crime should be considered by you separately as to each. You should try to keep the evidence as to each crime separate in your minds so as to apply only the proper evidence to the proper crime being considered by you.
The jury was given four separate lists of responsive verdicts (one for each count) and four separate verdict forms (one for each count). Further, the varied verdicts returned by the jury indicates it was not prejudiced against or hostile to defendant because of the joinder, and was able to segregate the evidence presented on the various charges.
*983 Based on our review of the proceedings, we conclude the jury was sufficiently apprised of its function and responsibilities so as to protect defendant from being prejudiced by the joinder of the offenses for trial. See Celestine, 452 So.2d at 680. The trial court did not abuse its discretion in denying defendant's motion to sever. This assignment of error number is without merit.

Assignment of Error No. 3
In this assignment of error, defendant contends the trial court erred in not granting his motion to suppress the physical evidence obtained in the search of the Zachary residence. He also argues the taped statement he gave police the following day should have been suppressed as well, because it was tainted by the illegal search. Although defendant's residence was searched pursuant to a search warrant, he argues the search warrant was invalid because the affidavit supporting it failed to enumerate a criminal offense. In brief, defendant asserts this omission rendered "any official belief in the existence of probable cause ... entirely unreasonable."
In order to be valid, "[a] search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." See also La.C.Cr.P. art. 162; La. Const. Art. I, Sec. 5; State v. Bourque, 622 So.2d 198, 219-20 (La.1993). Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. Bourque, 622 So.2d at 220; State v. Lazarus, 633 So.2d 225, 229 (La.App. 1st Cir.1993). Only the probability, and not a prima facie showing, of criminal activity is required. Lazarus, 633 So.2d at 229.
The probable cause standard is a practical, nontechnical conception. In determining whether an affidavit supports a finding of probable cause, it should be interpreted in a common-sense and realistic manner. Lazarus, 633 So.2d at 229. A magistrate's determination of probable cause should be paid great deference by reviewing courts. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); Lazarus, 633 So.2d at 229. On appeal, this Court must find only that the issuing judicial officer had a substantial basis for the finding of probable cause. See Gates, 462 U.S. at 239-41, 103 S.Ct. at 2333; Bourque, 622 So.2d at 220.
The search warrant in question herein was issued on the basis of an affidavit executed by Sergeant Cathy Thompson Doughty.[4] The affidavit sought authority to search a residence located in Zachary for property of the City of Baton Rouge, and stated that:
Affiant received a voluntary statement from a City Parish employee that he personally had taken a Table Saw belonging to City Parish to this residence to be used to cut lumber for this new construction and saw other tools at that time belonging to City of Baton Rouge.
Contrary to defendant's contentions, we conclude this affidavit sufficiently stated facts establishing probable cause for the issuance of the search warrant, despite the failure to enumerate a specific criminal offense therein. The affidavit clearly indicated the focus of the search was property belonging to the City of Baton Rouge, which was being used in the construction of a residence. The affidavit admittedly failed to state that the residence was a private residence rather than one belonging to the City of Baton Rouge. However, viewing the affidavit in a practical, common-sense manner, the inference that the residence was private is clear.[5] Additionally, *984 while the affidavit did not specifically list unauthorized use of movables as the crime under investigation, we agree with the trial court's conclusion that the illegality of using public property for personal gain was obvious. The affidavit sufficiently established the probability of criminal activity. Accordingly, we find no error in the trial court's conclusion that the affidavit established probable cause for the issuance of the warrant. In any event, even if there was insufficient information to support a finding of probable cause, we conclude the "good faith" exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would apply in this case. See State v. Shannon, 472 So.2d 286, 290-91 (La.App. 1st Cir.), writ denied, 476 So.2d 349 (1985).
Finally, since defendant's argument for the suppression of his taped statement is based on the premise that it was tainted by an illegal search, our conclusion that the search was valid likewise causes that argument to fall.
This assignment of error is without merit.

Assignment of Error No. 4
By this assignment of error, defendant argues the trial court erred in denying his plea of double jeopardy, which was based on the contention that the state provoked defendant into requesting a mistrial.
Normally, when a defendant's motion for a mistrial is granted, double jeopardy does not bar a second prosecution. La. C.Cr.P. art. 591; See Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982); State v. Koelemay, 497 So.2d 321, 323 (La.App. 2nd Cir.1986), writ denied, 503 So.2d 474 (1987). However, reprosecution is barred by double jeopardy when the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. See Oregon v. Kennedy, 456 U.S. at 679, 102 S.Ct. at 2091.
In this case, defendant moved for mistrial when a state witness, Mr. Hugh Shelton, invoked his Fifth Amendment right against self-incrimination during the state's direct examination. Prior to invoking the privilege, Mr. Shelton testified he sold several kitchen appliances to defendant without including sales taxes on the invoice. When the prosecutor asked how this was accomplished, he indicated the way he did it "in the past" was to use the name of a randomly chosen wholesaler on the invoice. Shortly thereafter, the trial court interrupted the state's direct examination and removed the jury from the courtroom to express concern that Mr. Shelton may be incriminating himself. The court ordered a recess to allow Mr. Shelton an opportunity to consult with his attorney.
When the trial resumed, the prosecutor declined to grant immunity to Mr. Shelton, indicating he was unprepared to grant blanket immunity when he did not know how often this type of transaction had occurred. He further stated he was surprised by the testimony that Mr. Shelton had used this procedure on occasions other than the purchase made by defendant. Mr. Shelton choose to invoke his Fifth Amendment privilege against self-incrimination when asked any further questions regarding sales taxes. Accordingly, the trial court granted defendant's motion for mistrial, since the invocation of the witness' Fifth Amendment privilege effectively foreclosed any meaningful cross-examination by defendant on matters already testified to.
On appeal, defendant argues the prosecutor deliberately provoked defendant's motion for mistrial. Defendant contends the prosecutor knew he could not obtain a theft conviction against defendant after Mr. Shelton testified he himself subsequently paid the sales taxes on the appliances purchased by defendant, and had always intended to do so. *985 Defendant argues the prosecutor deliberately lead Mr. Shelton into making incriminating statement so that he would invoke his Fifth Amendment privilege, knowing this would force defendant to request a mistrial.
Based on our examination of the record, we conclude it does not support defendant's contentions that the prosecutor deliberately provoked defendant's motion for a mistrial. While the prosecutor did decline to grant Mr. Shelton immunity at the first trial[6], he stated he was surprised by Mr. Shelton's testimony and was unwilling to grant blanket immunity without knowing how many times this type of transaction had occurred. Under the circumstances, the prosecutor's position was not unreasonable. Even if the prosecutor was negligent in not foreseeing the potential self-incrimination problem raised by Mr. Shelton's testimony, mere negligence is not the type of prosecutorial misconduct sufficient to bar a second prosecution. See State v. Cannon, 383 So.2d 389, 395 (La.1980), cert. denied, 454 U.S. 1052, 102 S.Ct. 596, 70 L.Ed.2d 587 (1981). Because the record contains no indication of bad faith or deliberate provocation of the mistrial by the prosecutor, we find no error in the trial court's denial of defendant's plea of double jeopardy.[7]
This assignment of error lacks merit.

Assignment of Error No. 5
In this assignment of error, defendant argues the trial court erred in admitting a taped statement (S-6) purporting to be that of defendant, because a continuous chain of custody was not established.
In order to introduce demonstrative evidence at trial, it must be identified either visually by testimony that the object at issue is the one related to the case or, alternatively, by establishing a continuous chain of custody. State v. Martin, 607 So.2d 775, 779 (La.App. 1st Cir.1992). Thus, it is not always necessary to establish a continuous chain of custody, if other evidence establishes it is more probable than not that the object sought to be introduced is the one connected to the case. La. C.E. art. 901; State v. Vaughn, 431 So.2d 763, 767-68 (La. 1983); State v. Watson, 484 So.2d 870, 873 (La.App. 1st Cir.), writ denied, 488 So.2d 1018 (1986).
In this case, the statement at issue was taken by Sergeant Cathy Doughty[8] and Detective Charles Whiddon of the Baton Rouge City Police. At trial, Sergeant Doughty visually identified the cassette tape offered by the state as the same cassette she recorded on February 8, 1994. She based the identification on the fact that the handwritten notations on the cassette included the date that defendant's statement was taken, defendant's name, the initials of Charles Whiddon (in his handwriting, which she recognized) and her own initials, in her handwriting. Additionally, after listening to the recorded statement in court, Sergeant Doughty indicated no alterations or changes had been made to it, and it reflected the information she received at the time the statement was given by defendant.
In view of the testimony of Sergeant Doughty visually and aurally identifying the cassette tape, we find no error in its admission. See Vaughn, 431 So.2d at 768; Watson, 484 So.2d at 873. Her testimony sufficiently established it was more probable than not that the tape recording introduced was the same statement given by defendant on February 8, 1994.
This assignment of error is meritless.

Assignments of Error Nos. 6 and 8
In these assignments of error, defendant contends the trial court erred in *986 admitting state exhibits S-1 and S-11. S-1 is an in globo exhibit consisting of copies of pay roll and sick leave records relating to defendant and S-11 is a copy of DPW work rules. Defendant argues S-1 and S-11 were erroneously admitted because they were not properly certified or authenticated at trial. We disagree.
La. C.E. art. 901 A provides that "[t]he requirement of authentication or identification... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." One method of authenticating documents is through the testimony of a witness with knowledge of what the document is, where it comes from, and how it is kept. La. C.E. art. 901 B(1); State v. Fontenot, 618 So.2d 915, 920 (La. App. 1st Cir.), writ denied, 623 So.2d 1332 (1993). In this case, the copies of the pay roll and sick leave records (S-1) were sufficiently identified and authenticated by the testimony of Ms. Carolyn Davis, a pay roll clerk who dealt personally with defendant's pay roll and sick leave records at the time in question. Her testimony established she handled these documents in the normal course of her duties at that time and was well-acquainted with them. Based on this witness' knowledge of what the documents were, where they came from, and how they were kept, the trial court properly overruled defendant's objection to the admission of S-1. Similarly, authentication of the DPW work rules (S-11) was established by the testimony of Mr. Fred Raiford, the Director of DPW, who was familiar with the rules by virtue of his position.
These assignment of error are without merits.

Assignment of Error No. 7
In this assignment of error, defendant contends the trial court erred in overruling his objection to the admission of state exhibit S-8, which is a chart indicating the alleged dates defendant took sick leave. Defendant argues the chart was inadmissible because six of the thirty-four dates shown on it were not included in the state's response to his motion for a bill of particulars. In his motion, defendant had requested a list of the dates of each alleged act of public pay roll fraud.
La.C.Cr.P. art. 488 provides that, when there is a variance between the allegations of a bill of particulars and the evidence offered in support thereof, the trial court has the discretion to order the amendment of the bill of particulars with respect to the variance. State v. Dukes, 609 So.2d 1144, 1160 (La.App. 2nd Cir.1992), writs denied, 618 So.2d 402 (1993) and 93-1421 (La.12/15/95), 664 So.2d 435. Upon motion of the defendant, he is entitled to a continuance for a reasonable time upon a showing that the amendment is prejudicial to him. La.C.Cr.P. art. 489.
In this case, however, the state did not request leave to amend the bill of particulars when defendant objected to the admission of the chart (S-8). Rather, the trial court overruled the objection when defense counsel acknowledged one of its own exhibits included evidence defendant took sick leave on the dates in question, i.e., the dates not included in the state's response. Therefore, regardless of whether the trial court erred in admitting S-8 without amendment to the bill of particulars, any error in doing so was harmless because the evidence was cumulative of other properly admitted evidence which showed defendant took sick leave on each of the dates in question. See La. C.Cr.P. art. 921; State v. Robertson, 603 So.2d 254, 257 (La.App. 1st Cir.1992), writ denied, 92-2339 (La.2/4/94), 633 So.2d 164. As noted, the other evidence included an exhibit introduced by defendant himself (D-1).
This assignment of error is without merit.

Assignment of Error No. 10[9]
In this assignment of error, defendant argues the trial court erred in permitting the rebuttal testimony of Ms. Dawn Guillot, a special assistant parish attorney, regarding statements defendant made at a civil service termination hearing. Defendant contends the testimony did not constitute *987 proper rebuttal evidence because it should have been presented as part of the state's case-in-chief. Defendant further asserts, "The state should not be permitted to offer an alleged statement of the accused in rebuttal when the defendant has not testified."[10]
The substance of Ms. Guillot's testimony on rebuttal was as follows. She represented the Parish at the termination hearing attended by defendant on January 10, 1995. Under her questioning, defendant admitted saying at an earlier pre-termination hearing that he was not ill on the days he took sick leave. However, while acknowledging his earlier statement that he was not ill, defendant testified at the termination hearing that he was actually ill on the days he took sick leave.
Generally, rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. See La. C.E. art. 611 E; La.C.Cr.P. 774. State v. Brown, 504 So.2d 1086, 1088 (La.App. 1st Cir.1987). The state may not reserve part of its case-in-chief for rebuttal testimony after the defense has put on its case and can no longer present evidence to rebut the state's case. The determination of whether evidence is proper rebuttal evidence, and therefore admissible, is an issue which is addressed to the sound discretion of the trial court. The trial court's determination will not be disturbed except in extreme cases, as where the evidence has been kept back deliberately and for the purpose of deceiving and obtaining undue advantage of the defendant. Brown, 504 So.2d at 1088.
In overruling defendant's objection to the rebuttal evidence in this case, the trial court noted that, since defendant presented evidence that he was ill during the period in question, the state had the right to present rebuttal evidence on this point. We agree. Although defendant himself did not testify, the record shows he presented extensive testimony from family members and friends on the issue of his purported ill health. Therefore, the state was entitled to present rebuttal evidence which tended to prove the contrary. The testimony of Ms. Guillot constituted such evidence. Moreover, there is no indication the state purposefully held back the rebuttal evidence to obtain undue advantage of defendant. Accordingly, we find no abuse of discretion in the ruling of the trial court admitting the rebuttal evidence.
This assignment of error lacks merit.

Assignment of Error No. 11
In this assignment of error, defendant contends the trial court erred in overruling his objection to comments made by the prosecutor during closing argument. Specifically, defendant complains of the following remarks made during the state's rebuttal closing argument.
We have spoken about the defendant as if he were a little fish and I warn you that a number of little fish like this in the city-parish government will rip the flesh off our bones like a group of piranhas and that is what we are facing here. If he is a little fish, he is a piranha in what he takes. It's a corruption of the system. It starts down low and it goes up higher. I would love to have you all back in three weeks when Mr. Durham [one of defendant's supervisors at DPW] will have his chance with the jury. (Emphasis supplied in brief by defendant.)
Defendant argues the reference to Mr. Durham's trial was impermissible, and the remarks "injected the suggestion of a conspiracy between persons working for the city-parish which was prejudicial."
Closing arguments may not appeal to prejudice. It must be confined to the evidence admitted, the lack of evidence, conclusions *988 of fact drawn from the evidence, and the applicable law. La.C.Cr.P. art. 774; State v. Martin, 550 So.2d 568, 572 (La.1989). Generally, a prosecutor retains considerable latitude in making closing arguments. However, even when a prosecutor exceeds this latitude, a conviction will not be overturned on the basis of improper argument unless the reviewing court is firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 374-75, cert. denied, ___ U.S. ___, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
In the instant case, it is true that no prior reference had been made to Mr. Durham's upcoming trial. However, upon cross-examination of Sergeant Doughty, defense counsel elicited testimony from her that Mr. Durham had been charged with criminal offenses as a result of the same investigation which resulted in the charges against defendant. Thus, the existence of criminal charges against Mr. Durham was not information new to the jury. Further, we do not believe any suggestion of a conspiracy raised by the prosecutor's remarks was so unfairly prejudicial as to constitute reversible error. Based upon our review of the record, we are not convinced the prosecutor's remarks influenced the jury or contributed to the verdicts. See Taylor, 93-2201, at 19, 669 So.2d at 375.
This assignment of error is without merit.

Assignments of Error Nos. 12 and 13(F)
In these assignments of error, relator complains the trial court failed to comply with La.C.Cr.P. art. 812 by either declaring a mistrial or returning the jury for further deliberations when the written ballot of one juror indicated he did not concur in the verdict.
Since the jury in this case was composed of six jurors, each juror was required to concur in order to return a legal verdict. La. C.Cr.P. art. 782 A. However, in response to the question, "Is this your verdict?", Mr. Charles Mullins, Sr., answered "No" on a written ballot for Count 1. The trial court, noting the verdict was improper because it was not unanimous, orally polled the jurors. When Mr. Mullins was asked whether the "guilty of attempted pay roll fraud" verdict on Count 1 was his verdict, he stated, "Yes". All other jurors indicated they also concurred with the verdict. The jury foreman was then asked whether the vote was unanimous at the time the verdict was reached, and he indicated it was. The trial court then again questioned Mr. Mullins, as follows:
THE COURT: OKAY. MR. MULLINS, ON YOUR WRITTEN VERDICT, YOU HAVE INDICATED NO. DID YOU MISUNDERSTAND?
MR. MULLINS: II PROBABLY DID. I MEANT TO SAY YES.
THE COURT: MR. MULLINS, AS TO YOUR VOTE OF GUILTY OF ATTEMPTED PUBLIC PAYROLL [sic] FRAUD, IS THAT YOUR VERDICT?
MR. MULLINS: THETHE YES VOTE WOULDYES, MA'AM.
THE COURT: IS GUILTY OF ATTEMPTED PAYROLL THE [sic] FRAUD?
MR. MULLINS: YES, MA'AM.
The court then accepted the verdict.
On appeal, defendant argues the trial court erred in not complying with La.C.Cr.P. art. 812. This provision provides that, if an insufficient number of jurors concur with the verdict upon polling of the jury, the trial court may remand the jury for further deliberations or may declare a mistrial. However, defendant made no contemporaneous objection at trial to the procedure employed by the trial court. Thus, the trial court was not afforded an opportunity to correct any error in its failure to comply with the technical requirements of C.Cr.P. art. 812. See State v. Parker, 506 So.2d 675, 682 (La.App. 5th Cir.), writ denied, 512 So.2d 456 (1987); State v. Lamb, 458 So.2d 996, 999 (La.App. 3rd Cir.1984). Therefore, since defendant failed to make a contemporaneous objection to the polling procedure, he cannot raise this issue for the first time on appeal. La.C.Cr.P. art. 841 A; State v. Gardette, 352 So.2d 212, 215 (La.1977); State v. Sosa, 328 So.2d 889, 892 (La.1976). Moreover, we believe any error committed by the trial court in the manner the jury was polled was harmless, since the record shows beyond a *989 reasonable doubt that the verdict on Count 1 was unanimous. See La.C.Cr.P. art. 921.
These assignments of error lack merit.

Assignment of Error No. 13(a), (b) and (c)
In this assignment of error, defendant argues the trial court erred in denying his motion for post-verdict judgment of acquittal. Initially, he contends the state failed to establish the trial court's jurisdiction over the charged offenses because no evidence was introduced at trial establishing where the charged offenses occurred. Both La. Const., Art. 1, Sec. 16 and La.C.Cr.P. art. 611 require that a criminal trial be held in the parish where the offense was committed. The state argues defendant is precluded from raising this issue on appeal since he did not file a motion to quash asserting improper venue. Defendant asserts he was not required to raise this issue before trial, since it is a jurisdictional issue, not merely a question of venue.
La.C.Cr.P. art. 615, provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
This provision explicitly states venue is not an essential element to be proven at trial but, rather, is a jurisdictional matter to be decided before trial. The cases defendant relies on in brief to support his argument to the contrary are not applicable, because they were decided prior to the amendment of Article 615 by Act 554 of 1988, which rewrote the provision as it now exists. Before the 1988 amendment, Article 615 provided that the state had the burden of proving venue at trial beyond a reasonable doubt, even if the trial court had passed on the issue before trial.
In State v. Matthews, 632 So.2d 294, 296 (La.App. 1st Cir.1993), the defendant argued the jurisdiction of the trial court was not established because the state failed to prove the offenses occurred in Lafourche Parish. Citing La.C.Cr.P. art. 615, this Court held that "[b]ecause the defendant did not file a motion to quash raising venue as an issue, we find no merit to his argument." In the present case, we likewise find no merit in defendant's argument because of his failure to file a motion to quash raising this issue.
Next, defendant argues the evidence was insufficient to sustain the conviction of filing false public records. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Probst, 623 So.2d 79, 82 (La.App. 1st Cir.), writ denied, 629 So.2d 1167 (1993).
In this case, defendant's conviction for filing false public records is based on his action in submitting sick leave authorization forms to his employer, which falsely indicated he was ill. Filing false records is defined by La. R.S. 14:133 A, in pertinent part, as follows:
Filing false public records is the filing or depositing for record in any public office or with any public official ... of any of the following:
* * * * * *
(3) Any document containing a false statement or false representation of a material fact.
Defendant argues the state's evidence was insufficient to establish the following essential elements of this crime: (1) his identity as the perpetrator; (2) the "filing or depositing for record" of sick leave forms; and (3) the falsity of information on the sick leave forms.
*990 Regarding the identity of the perpetrator, defendant maintains "[i]t was incumbent upon the state to have the defendant identified in open court as the perpetrator." We disagree. It is true that identity of a defendant as the perpetrator is an essential element of the crime which must be proved by the state beyond a reasonable doubt. However, identification can be inferred from all the facts and circumstances that are in evidence. State v. Burton, 615 So.2d 1042, 1046 (La.App. 1st Cir.), writ denied, 620 So.2d 874 (1993), cert. denied, ___ U.S. ___, 116 S.Ct. 482, 133 L.Ed.2d 409 (1995). It is not necessary for a witness specifically to "point out" the defendant in court. See Burton, 615 So.2d at 1046; United States v. Seals, 987 F.2d 1102, 1110 (5th Cir.), cert. denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993).
In this case, viewing the evidence in the light most favorable to the prosecution, there were sufficient circumstances from which to infer the defendant's identity as the same Wayne Amato referred to throughout trial by the witnesses, prosecutor, and defense counsel. A number of witnesses who knew Wayne Amato personally, including co-workers and family members, saw defendant in court and heard him referred to as Mr. Amato. Although none of these witnesses were asked to make an in-court identification, none of them denied defendant's identity.
We also find no merit in defendant's argument that the evidence did not sufficiently establish the filing or depositing of a document for record in a public office. Defendant acknowledges in brief that the state introduced evidence that defendant gave one of his sick leave authorization forms directly to Ms. Carolyn Davis, the clerk who handled the pay roll for Wastewater Collections (the division of the Department of Public Works where defendant worked). However, he argues it was not shown that the delivery was for the purpose of the form being kept on file as a matter of record. Defendant submitted the sick leave forms for pay roll purposes. Ms. Davis indicated she utilized these forms in preparing the pay roll, and that pay roll records were kept in a file cabinet in the office of Wastewater Collections. Therefore, the jury reasonably could have concluded the forms were submitted for the purpose of being "of record" in a public office.
Defendant further argues the state did not prove the sick leave forms contained false information or a false representation of a material fact. The sick leave form defendant delivered to Ms. Davis personally indicated he had been absent from work because he was "sick". The other forms introduced into evidence indicated either the same thing or that he had a "virus". It is defendant's position that the state failed to prove these statements were false, i.e., that he was not ill.
Conflicting evidence was presented at trial regarding whether or not defendant was sick on the days he took sick leave from October to December of 1993. As noted earlier, defendant presented extensive testimony from family members and friends indicating he was having health problems during that period. Defendant also presented the testimony of his family practitioner, Dr. Jeffery Burnham, who treated defendant on September 14, 1993, for chest pains secondary to anxiety. At that time, Dr. Burnham found defendant's physical examination to be essentially normal, and prescribed anxiety medication. The prescription was for a period of approximately three weeks; defendant did not request a refill. Dr. Burnham did not see defendant again until October 25, 1994, at which time he made the same diagnosis. Since Dr. Burnham did not see defendant during the period in question, he testified he could not say what defendant's condition was at that time, although anxiety-type problems of this type are usually continuing.
To establish that defendant was not sick during this period, the state presented the taped statement he gave to police on February 8, 1994(S-6). During that statement, defendant was questioned about the sick leave he took. At one point, he was asked, "So actually your supervisors knew that you were not sick, that you were building a house?" Defendant responded, "That's correct." The state also presented the testimony of Ms. Dawn Guillot, an assistant parish attorney, who stated that defendant admitted *991 to her at a pre-termination hearing that he was not ill on the days he took sick leave.
The unanimous guilty verdict in this case indicates the jury accepted the state's evidence that defendant took sick leave for days that he was not ill, which meant that the sick leave forms he submitted contained false information. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. Probst, 623 So.2d at 82-83. After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of filing false public records. Accordingly, the trial court did not err in denying defendant's motion for post-verdict judgment of acquittal.
Finally, defendant argues that, even if he did concede there was sufficient evidence to prove filing of false public records, the defense of justification under La. R.S. 14:18(1) applies. This provision provides that the defense of justification can be claimed "[w]hen the offender's conduct is an apparently authorized and reasonable fulfillment of any duties of public office". Defendant contends this provision is applicable because he presented evidence that "he was actually ill and that the sick leave was authorized which justifies him in delivering the sick leave forms to Ms. Carolyn Davis."
As discussed above, the jury obviously rejected defendant's contention that he was ill. Therefore, his claim of illness cannot serve as justification for his conduct. Furthermore, even assuming arguendo that one of defendant's supervisors did approve his conduct of taking sick leave to work on his house, it cannot be rationally argued that this conduct was a "reasonable fulfillment" of any duty of "a public office". La. R.S. 14:18(1) is not applicable unless this requirement is also met. Thus, justification for defendant's conduct within the meaning of La. R.S. 14:18 was not established in this case.[11]

Conclusion
For the above reasons, defendant's conviction and sentence for attempted pay roll fraud is hereby reversed. His conviction and sentence for filing false public records is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
Dawn Guillot, Assistant Parish Attorney, testified on rebuttal that in defendant's civil service pre-termination hearing, he "recalled admitting to us that he, in fact, was not sick on any of the dates that he requested sick leave. He admitted that he recalled that and that he did at that time say he was not sick."
Proof that defendant was not sick at the time he claimed sick leave was an essential element of the State's case on the filing false public records charge. The State presented evidence of this during its case in chief through Sgt. Doughty's testimony that defendant told her he was not sick when he took sick leave. It can also be inferred he was not sick from his explanation on the tape recording that he began taking sick leave after he used up all his annual leave and comp time and that his supervisor knew he was building a house.
Rebuttal evidence is that which becomes relevant or important only as an effect of some evidence introduced by the other side. State v. Turner, 337 So.2d 455, 458, quoting State v. Smith, 120 La. 530, 532, 45 So. 415 (1908). The prosecution is entitled in rebuttal to explain, repel, counteract, or contradict evidence adduced by the defense to strengthen its own case, but it may not introduce new issues or facts. State v. George, 95-0110, p. *992 12 (La.10/16/95), 661 So.2d 975, 981. Nor may the State reserve part of its case-in-chief for rebuttal testimony after the defense puts on its case. George, 95-0110, pp. 12-13, 661 So.2d at 981; State v. Williams, 445 So.2d 1171, 1181(La.1984); Turner, 337 So.2d at 458. "This is contrary to statute, to ancient jurisprudence, and to rules of fair play." Turner, 337 So.2d at 458. The State should offer all of its evidence at once "as a matter of common fairness and justice to the accused." State v. King, 176 La. 812, 819, 147 So. 1, 3 (1933).
The statement defendant made to Guillot was clearly inculpatory. It did not become relevant only because of some evidence introduced by defendant; it should have been presented as part of the State's case-in-chief. In Turner, the supreme court noted that an inculpatory statement was of such importance to proof of guilt that it should almost always form an important part of the State's case-in-chief. 337 So.2d at 459. The Turner court quoted Smith: "[S]ince nothing could be more relevant in a criminal case than the confession of the accused, there can be no doubt that such confession must either be produced as part of the evidence in chief or not at all." 45 So. at 415.
In Smith, Justice Provosty went on to say:
So long as the rule shall prevail in this state that a defendant cannot of right rebut rebuttal evidence, the prosecution will have to be confined strictly in rebuttal to rebuttal evidence proper. Otherwise, by an elastic appreciation of what is and is not rebuttal, an accused might be deprived of his constitutional right to be heard before being condemned.... The presumption is that the prosecution offered to prove this confession because it thought that, without it, the case would not have been made out beyond a reasonable doubt; hence, the presumption is that the defendant was convicted on this confession. If so, and if he was denied the right to prove that he had never made any such confession, he was condemned without a hearing.
120 La. at 532-533, 45 So. at 416. (Citations omitted.)
In State v. Hills, 354 So.2d 186 (La.1977), the State introduced during rebuttal a confession by defendant to a collateral offense. The court found it was not reversible error but stated: "We note here that a different issue would be presented if the State had withheld until rebuttal a confession by the defendant to the offense charged, rather than to a collateral offense." 354 So.2d at 190 n. 2.
Two kinds of prejudice may result as a result of the introduction of evidence during the State's rebuttal which should have been introduced during its case-in-chief: 1) the denial of an opportunity to defend against new issues; and 2) the production of strong evidence after defendant rests may unfairly emphasize the prosecution's "rebuttal" evidence, contrary to the legislatively-intended order of proof. Turner, 337 So.2d 455, 458.
The first type of prejudice may be cured by the trial court permitting surrebuttal. A defendant has no right to surrebuttal, but the trial court may permit it in its discretion. La.C.Cr.P. 765(5).
The second type of prejudice is sometimes incurable. Whether reversible error has resulted may depend upon the nature of the new evidence offered by the State for the first time in improper rebuttal. If it involves a peripheral issue, it may be regarded as harmless. But if it unfairly places extreme weight on a part of the State's evidence which should have been introduced during its case-in-chief, it is incurable and reversible. Turner, 337 So.2d at 458-459. Furthermore, testimony which is merely a repetition of negative testimony given during the case-in-chief is considered the second type. State v. Davis, 246 La. 383, 164 So.2d 589 (1964); State v. Bagwell, 519 So.2d 875, 881 (La.App. 2d Cir.1988).
Evidence that is not otherwise admissible in rebuttal may be introduced if it qualifies as impeachment evidence. In this case, however, defendant did not testify, and thus Guillot's testimony could not have been independently admissible as impeachment. See State v. Mahfouz, 197 La. 216, 220, 1 So.2d 82, 83-84 (1941).
Guillot's testimony did not create the first type of prejudice; it could not have been cured by surrebuttal. It was not something *993 new. According to Guillot, defendant essentially confessed during the pre-termination hearing that he claimed sick leave when he was not sick, an essential element of the filing false public records charge. This was strong negative evidence which should have been presented during the State's case-in-chief. Were it not for the skillful cross-examination of defendant's counsel, we would be forced to find this was reversible error. The cross-examination of Guillot, however, showed that in later testimony at the same pre-termination hearing, defendant explained he actually was ill at the time he took leave. The last testimony the jury heard was Guillot quoting defendant: "I'm saying that I actually was ill and I actually had authorization to do it...."
I respectfully concur.
NOTES
[1] Honorable Thomas W. Tanner, serving pro tempore, by special assignment of the Louisiana Supreme Court.
[2] The state offered no evidence defendant's accrued sick leave benefits were not earned by him through the performance of past services.
[3] In brief, defendant argues the trial court gave an inadequate instruction to the jury regarding the necessity of keeping each charge and the evidence thereon separate. However, we note defendant did not object to this instruction at trial. Absent a contemporaneous objection, a defendant may not complain on appeal of an allegedly inadequate jury instruction. La.C.Cr.P. arts. 801 and 841; State v. Buchanon, 95-0625, p. 8, n. 1 (La.App. 1st Cir. 5/10/96), 673 So.2d 663, 667, writ denied, 96-1411 (La.12/6/96), 684 So.2d 923. Further, the instruction was adequate.
[4] At the time of the execution of the warrant, this witness' name was Cathy Thompson. At the suppression hearing, she stated her name had changed to Cathy Doughty.
[5] Even assuming arguendo that such an inference is not justified, Sergeant Thompson's testimony at the suppression hearing indicated she was aware prior to executing the affidavit that the residence was defendant's private residence. Normally, the law does not permit a reviewing court to go outside the four corners of a search warrant affidavit in reviewing a probable cause determination. However, where there are inadvertent material omissions, the reviewing court will look to outside evidence to support or destroy a probable cause finding. State v. Revere, 572 So.2d 117, 128 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (1991). In the present case, given the importance of the fact that the residence where City-Parish tools and equipment was being used was private rather than public property, we can only conclude the omission of this fact from the affidavit was inadvertent. See Revere, 572 So.2d at 128. Therefore, considering this omitted information together with the facts in the affidavit, we agree with the determination of probable cause made by the trial court.
[6] The state granted Mr. Shelton derivative use immunity at the second trial.
[7] On appeal, defendant argues that, in addition to the situation regarding Mr. Shelton's testimony, the prosecutor provoked him into requesting a mistrial by several other actions, all of which occurred prior to trial. However, since the mistrial was granted solely on the basis of Mr. Shelton asserting his Fifth Amendment privilege, we do not believe the alleged pretrial actions are pertinent to the issue of whether the prosecutor deliberately provoked the mistrial.
[8] This officer is the same one who executed the affidavit for the search warrant of defendant's residence, and was known at that time as Sergeant Cathy Thompson.
[9] In view of our holding reversing the conviction for public pay roll fraud, we pretermit consideration of Assignment of Error No. 9, which relates solely to that conviction.
[10] In brief, defendant also argues the rebuttal evidence was not admissible on the grounds the state did not give Article 768 notice and did not advise defendant of its intent to use his prior statement as required by his discovery request. However, since defendant did not raise these grounds at the time of the objection, he cannot do so now for the first time on appeal. The reasons for an objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. A defendant is limited on appeal to the grounds for the objection articulated at trial. State v. Schamburge, 344 So.2d 997, 999 (La.1977); Fontenot, 618 So.2d at 920.
[11] Defendant raised several other issues in this assignment of error, which are disposed of elsewhere in this opinion.