| PATRICIA RIVET MURRAY, Judge.
Michael A. Bernard appeals his conviction for one count of aggravated oral sexual battery.[1] For the reasons that follow, we affirm.

STATEMENT OF THE CASE

On June 27, 2001, Michael Bernard was charged by bill of information with one count of aggravated oral sexual battery in violation of La. R.S. 14:43.4, and two counts of sexual battery, in violation of La. R.S. 14:43.1. At arraignment on July 2, 2001, Mr. Bernard pled not guilty. Following a hearing on defense motions on July 16, 2001, the trial court denied the motions to suppress the evidence and identification and found probable cause.
The jury trial began on August 20, 2001 with the selection of six jurors. On the following day, Mr. Bernard filed a motion to quash based on double jeopardy, which was denied. The jury found Mr. Bernard guilty as charged on all three counts. On September 14, 2001, Mr. Bernard filed motions for new trial and post verdict judgment of acquittal, which were both denied. The trial court sentenced him on count one (aggravated oral sexual battery) to thirteen years at hard labor and on counts two and three (sexual battery) to seven years at hard labor. The Llatter sentences on counts two and three were ordered to be served concurrently with each other and consecutively to the former sentence on count one. Mr. Bernard filed a motion to reconsider sentence, which was denied. He also filed a motion for appeal and designation of the record.[2] The state then filed a habitual offender bill of information. Following a multiple bill hearing, the trial court found Mr. Bernard to be a second felony offender, vacated the sentence on count one, and imposed a thirty-year sentence. This appeal followed.

STATEMENT OF FACTS

On Mardi Gras day in February 2001, eight-year old M.M.[3] and her older sister attended a parade with their adult cousin, Tomika Neely. While they were waiting for the parade, Ms. Neely overheard the sisters arguing. In the midst of their argument, Ms. Neely heard the older sister tell M.M. “that’s why Michael stuck you in the booty, in the rectum.” Disturbed by what she had overheard, Ms. Neely questioned M.M. M.M. related to Ms. Neely that Mr. Bernard, her mother’s former boyfriend, had sexually molested her. When they returned home from the parade, Ms. Neely revealed what M.M. had told her to her mother (M.M.’s aunt). M.M.’s aunt then called both M.M.’s mother and the police.
At trial, M.M.’s mother, Andre’ Mims, related that the incidents occurred while she and several of her children were living *1003 with Mr. Bernard at 2613 Egania Street in New Orleans. They lived there from approximately October 2000 until February 2001 and apparently had moved sometime before Mardi Gras day. Ms. Mims further testified that she did not notice anything unusual about her daughter |3while they were living on Egania Street except that M.M. frequently complained of a pain in her bottom.
M.M.’s older sister testified that frequently in the evening while their mother was at work and she and M.M. were watching television, Mr. Bernard would call M.M. into the master bedroom and close the door. When M.M. would come out often she would be crying and complaining that her bottom hurt. The sister also testified that on one occasion Mr. Bernard called her into the master bedroom and told her to pull her pants down, but she refused and went back into her room.
M.M. testified that there were several incidents and that the last one occurred about two weeks before they moved from Egania Street. She stated that Mr. Bernard would call her into the master bedroom and tell her to take off her clothes and that she would tell him that she did not want to. He would then remove her clothes, start kissing her, put his finger up her rectum, and lick her “private part.” M.M. further testified that a similar incident occurred on the living room sofa while her mother was on the telephone. On other occasions M.M. stated that Mr. Bernard would remove her clothes, make her touch him on his private part, and place his private part in her mouth. She stated that a white substance would come out of his private part. M.M. still further testified that Mr. Bernard told her not to tell anyone about these incidents and that if she did tell anyone about them, that something bad would happen to her mother, sister; and little brother. She stated that she believed him.
Dr. Scott Benton, who was qualified as an expert in the field of pediatric forensic medicine, testified that in March 2001 his partner performed a physical examination of M.M. Although the results of that examination were normal, Dr. Benton testified that it was typical for a victim of M.M.’s age to have a normal | ¿physical examination despite sexual abuse of the nature alleged to have occurred. Detective Larry Singleton of the New Orleans Police Department Child Abuse Unit also testified regarding the details of the investigation and arrest of Mr. Bernard.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

Mr. Bernard asserts two intertwined assignments of error. First, he alleges that the trial court erred in failing to order a mistrial after the jury was twice unable to reach a unanimous verdict on the charge of aggravated oral sexual battery. Second, he asserts that in the event the first error was not preserved for appellate review due to his trial counsel’s failure to object to the jury’s continued deliberation, that his trial counsel was ineffective.
Jury polling is governed by La.C.Cr. Pro. art. 812, which provides:
The court shall order the clerk to poll the jury if requested by the state or the defendant. It shall be within the discretion of the court whether such poll shall be conducted orally or in writing by applying the procedures of Paragraph (1) or Paragraph (2) of this Article.
(1) Oral polling of the jury shall consist of the clerk’s calling each juror, one at a time, by name. He shall announce *1004 to each juror the verdict returned, and ask him, “Is this your verdict?” Upon receiving the juror’s answer to the question, the clerk shall'record the answer.
If, upon polling all of the jurors, the number of jurors required by law to find a verdict answer ‘Tes,” the court shall order the clerk to record the verdict and the jury shall be discharged. If, upon polling all of the jurors, the number required to find a verdict do not answer ‘Tes,” the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with Article 775.
(2) The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words “Is this your verdict?” _[¿Each juror shall write on the slip of paper the words “Yes” or “No” along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by law to reach a verdict answer “yes” the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer ‘Tes,” the court may remand the jury for further deliberation, or the court may declare a mistrial in accordance with Article 775.
Mistrials are governed by La.C.Cr.P. art. 775, which provides:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceeding which would make any judgment entered upon a verdict reversible as a matter of law.
In this case, when the six-person jury returned to the courtroom after deliberations to deliver its verdict, the trial judge read aloud the verdict from the verdict sheet as to both counts. The judge then addressed the foreperson and asked if that was the verdict of the jury, and the foreperson replied affirmatively. The judge then addressed the entire jury and asked them if that was their verdict. An unidentified juror responded, stating “[c]an you read the first verdict again, please?” The judge then re-read aloud the verdict as to count one, which was guilty of oral sexual battery. The judge then asked the jury whether this was their verdict. Again, an unidentified juror (apparently the same one) responded it was not. The trial judge then returned the jury to the jury room, stating “[l]et me send you all back upstairs to give you an opportunity to look at the verdict sheets again and your polling slips.” The judge reminded the jury that the verdict had to be unanimous. At that point, the jury returned to the jury room.
IfiWhen the jury returned to the courtroom, the judge instructed the foreperson to rewrite the verdict on the verdict sheet, as the previous verdict (oral sexual battery) had been scratching through and replaced with aggravated oral sexual battery. The judge then distributed a second set of polling slips to the jurors and asked that each juror write out the entire verdict on the polling slip so that the record would be clear. The record reflects that the judge had them do this in the courtroom, stating “you all don’t have to move out of your seats if you can write it right here.”
A review of this second set of polling slips reflects that three jurors wrote “guilty of aggravated oral sexual battery” *1005 (with some spelling errors); two jurors wrote, “guilty of aggravated sexual battery” (again with some spelling errors), and the final juror (whose handwriting is difficult to decipher) apparently wrote “guilty of sexual battery.” The judge then sent the jurors with the verdict sheet back to the jury room to complete the individual polling slips a third time In so doing, the judge instructed them that “[i]t has to read like one of these verdict[sie] on this [responsive verdictjsheet.”
When the jury returned to the courtroom, the judge instructed the foreperson to write the verdict a third time on the verdict sheet. The verdict sheet and all six polling slips reflect the verdict of guilty of aggravated oral sexual battery. The judge thus found that “[a]ll six have concurred in reaching this verdict” and ordered that “the verdict is proper as to form and content.” Finally, the court stated for the record:
With the polling slips, we likewise wanted to make very, very sure that the polling slips conformed with the verdict that was written out by the foreperson, and that there was no discrepancy or no indication that anything had changed or there were any further 17deliberations. We were just making sure that the form and format was complete.
On appeal, Mr. Bernard argues that after the second polling of the jurors it was clear that the jurors did not understand their job — reaching a proper verdict — and that his trial counsel should have recognized this and either objected or moved for a mistrial. He further contends that the trial court on its own should have recognized this and declared a mistrial, as permitted by La.C.Cr.P. arts. 775 and 812. He argues that by allowing the jurors to continue deliberating there was a risk that a minority of jurors would have undue influence on the majority. He suggests that because the jurors had some difficulty in completing the second set of polling slips and because the third set were completed without error the jurors must have assisted one another in completing them.
Mr. Bernard’s trial counsel’s failure to make a contemporaneous objection to the trial court’s polling procedures precludes him from raising an objection regarding those procedures for the first time on appeal. State v. Amato, 96 0606, p. 23 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, 988 (citing La.C.Cr.P. art. 841 A; State v. Gardette, 352 So.2d 212, 215 (La.1977); State v. Sosa, 328 So.2d 889, 892 (La.1976)). Nonetheless, even if Mr. Bernard had preserved the issue for appellate review, this argument is unpersuasive and thus his assignment of error regarding his counsel’s ineffective assistance is without merit.[4]
The alleged error in polling the jury apparently resulted from the foreperson writing the wrong verdict on the first verdict sheet. The judge’s efforts to ensure that the intention of the jury was accurately reflected by the verdict were clearly Improper. The record reflects, as noted above, that the jurors were asked to complete the second set of polling slips while seated in the jury box without the benefit of the list of responsive verdicts. In contrast, the jury completed the third set of polling slips in the jury room with the benefit of the list of responsive verdicts. Indeed, the trial court expressly instructed the jurors to take the list of responsive verdicts with them to the jury room and to conform to that list in completing their slips the third time. Accord- *1006 mgly, there is nothing to suggest that either a minority of jurors had an undue influence on the majority or that the trial court pressured the jurors to reach a unanimous vote.
State v. Curtis, 99-45 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, involved a situation similar to the present one. In Curtis, the jury returned to the courtroom following deliberations and handed in a verdict form that merely indicated guilty. The judge returned the verdict form to the foreperson and instructed her to write the appropriate crime on the form. Thereafter, the clerk read the verdict, which was guilty of attempted illegal carrying of a firearm by a convicted felon. A polling of the jury showed a vote of ten “yes” and two “no.” Immediately thereafter a juror stated that there was some confusion and that the polling was inaccurate. The court then gave the jury another verdict form and instructed the jury to return to the jury room and complete the form properly in accordance with the vote of the jury. Defense counsel objected to the procedure and requested a mistrial. The judge denied the defendant’s motion for mistrial stating, “it is clear to me that this foreperson changed the verdict of the jury on her own and there’s obvious confusion. These jurors expected that what they voted on would be read here in Court.” Curtis, 99-45, pp. 16-17, 739 So.2d at 942.
|9On appeal, the defendant in Curtis argued that the multiple deliberations and verdicts created a gross legal defect in the proceedings which warranted the granting of a mistrial and that the re-deliberation after a valid verdict was outside the trial court’s discretion. Although the verdict had already been recorded before the juror expressed that the polling and recorded verdict did not reflect the true intention of the jury, the appellate court in Curtis found that the trial judge handled the matter appropriately and in the only way possible to ensure an accurate verdict given the unique circumstances of the case. See also State v. Brooks, 93-0388 (La.App. 1 Cir.12/29/93), 633 So.2d 659; State v. Haynes, 99 1973, p. 13 (La.App. 1 Cir. 6/23/00), 762 So.2d 1247, 1255 (noting “mistrial is required only where the jury is unable to reach a verdict by the proper concurrence.”)
Likewise, as in Curtis, the foreperson in this case wrote the wrong verdict on the first verdict sheet, and the trial court’s attempts to ensure that the jury’s intention was accurately reflected by the verdict were therefore proper. We thus find Mr. Bernard’s argument unpersuasive.

DECREE

For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

.As the state points out, Mr. Bernard’s assignments of error pertain only to count one, aggravated oral sexual battery. He failed to assign any error as to the other count. As a result, only count one is before us on appeal.

. On April 12, 2002, Mr. Bernard filed a pro se writ application with this court. Granting the writ, we ordered the trial court to rule on Mr. Bernard’s motion for appeal.

. Due to the nature of the offense the victim’s initials, M.M., have been used.

. As the state suggests, to the extent Mr. Bernard assigns error as to the form of the verdict, such error is subject to patent error review as part of the "pleadings and proceedings.” La.C.Cr.P. art. 920(2).