STATE OF LOUISIANA      *      NO. 2023-KA-0048

VERSUS      *

     COURT OF APPEAL

KEVIN RICKMON      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 18-02076, DIVISION "C"
Honorable Kim C. Jones, Judge Presiding
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Karen K. Herman)

Jeff Landry
Attorney General
J. Taylor Gray
Assistant Attorney General
Winston E. White
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
P. O. Box 94005
Baton Rouge, LA 70804

     COUNSEL FOR APPELLEE/STATE OF LOUISIANA, DEPARTMENT OF JUSTICE

Kevin Vincent Boshea
ATTORNEY AT LAW
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

     COUNSEL FOR DEFENDANT/APPELLANT

**CONVICTIONS AND
SENTENCES AFFIRMED**

**AUGUST 30, 2023**

JCL

TFL

KKH

This is a criminal appeal. The defendant, Kevin Rickmon ("Defendant"), appeals his convictions and sentences for sexual battery and attempted third degree rape. For the reasons set forth below, we affirm Defendant's convictions and sentences.

On November 13, 2018, the St. Bernard Parish Grand Jury indicted Defendant on one count of sexual battery, a violation of La. R.S. 14:43.1, and one count of attempted third degree rape, a violation of La. R.S. 14:27 (43). Defendant appeared for his arraignment on December 19, 2018, and entered a plea of not guilty. A trial by jury commenced on May 11, 2021.

On May 14, 2021, the jury returned verdicts of guilty as charged on both counts. After both guilty verdicts were read, the judge directed the clerk to poll the jury in writing. Each juror was provided a polling slip which asked, "Is this your verdict?"[1] After the jurors completed the polling slips, the clerk collected the slips and then read aloud the name and response given by each individual juror. Each juror responded "yes" or "guilty." Upon completion of the polling process, the judge certified the verdicts as legal.

_____

[1] Defendant attached the redacted jury polling slips, along with Defendant's Motion to Unseal Jury Polling Slips, as exhibit "B" to his original appellate brief.

Defendant orally moved for a new trial on June 22, 2021, on the basis that the verdicts were contrary to the law and the evidence. The district court denied Defendant's motion for a new trial. On the same day, the district court designated both convictions as crimes of violence and sentenced Defendant to six years at hard labor for sexual battery, without benefit of probation, parole or suspension of sentence, and ten years at hard labor for attempted third degree rape, without benefit of probation, parole or suspension of sentence, and ordered the sentences to run concurrently. On June 24, 2021, Defendant filed a motion to reconsider sentence, which was denied by the district court on June 25, 2021. This appeal followed.

The victims in this case are two female siblings who lived with their mother and a younger brother who was blind.[2] Both victims testified against Defendant. The State's case was supported by various testimonies and evidence, including forensic reports of cellphone extractions from the victims.

The first incident involving the attempted rape occurred on July 23, 2016, when the older sibling victim ("Older Sibling") was 15 years old. She testified that Defendant sat on a couch, removed her clothes, and attempted intercourse, but failed due to a lack of an erection. The incident was interrupted by the arrival of another sibling. Shortly thereafter, the Older Sibling told her friend about the attempted rape, and the friend testified to this at trial. The Older Sibling also after the incident noted what happened on her cellphone.

The second incident involving the sexual battery occurred on June 11, 2018, when the younger sibling victim ("Younger Sibling") was 14 years old. She

_____

[2] In accordance with La. R.S. 46:1844(W)(1)(a), the identities of the persons who were minors at the time of the offenses are kept confidential.

testified that Defendant touched her breast, slapped her on the buttocks and touched her vagina over her clothes. The brother testified and collaborated that he heard Defendant that night. After leaving the bedroom, Defendant bumped into the brother in the hallway. Upon making contact with the brother, Defendant briefly addressed the boy. The brother knew it was Defendant, because he recognized Defendant's voice. The brother asked Defendant what he was doing, but received no response. The brother heard Defendant exit the apartment shortly thereafter.

The following day, while the victims' mother was preparing dinner, she asked the Younger Sibling to go over to Defendant's apartment to borrow breadcrumbs. While she was inside the apartment, Defendant slapped her on the behind. She grabbed the container of breadcrumbs and rushed back to her apartment. Upon returning home, the Younger Sibling informed her mother and her older sister that she never wanted to go back to Defendant's apartment but offered no explanation as to why.

At dinner that night, the brother asked why Defendant had been at the apartment the previous night when everyone was asleep. Thereafter, the sisters went into one of the bedrooms, where the Younger Sibling told the Older Sibling what had happened to her earlier that day. The Older Sibling, in turn, told the Younger Sibling that "something similar" had happened to her with Defendant a couple of years earlier.

After the victims confided in each other, they told Defendant's wife, who did not take action. They later informed their mother, leading to the involvement of law enforcement.

At trial, Detective Lieutenant Robert Garofalo and Detective Sergeant Brad Alphonso also testified on behalf of the State. The State introduced various pieces

of evidence, including forensic extraction reports for the victims' cell phones, which were introduced into evidence and admitted as State's exhibits A and B.[3]

The lead investigator, Sgt. Alphonso, collected evidence, interviewed witnesses, and obtained an arrest warrant. The victims were interviewed at the Child Advocacy Center, corroborating their accounts. Phone records and conversations were used as evidence.

As part of his investigation, Sgt. Alphonso recorded an interview with the friend that the Older Sibling called and told about the attempted rape shortly after it happened. He also recorded an interview with the victims' blind younger brother. The discs containing the audio interviews of the friend and the brother were admitted as State's exhibits 3 and 4, respectively.

The defense presented testimony that challenged the victims' accounts. Defendant's wife testified that she did not perceive the incidents as relayed to her by the victims as crimes and believed the victims were discussing unrelated issues. Defendant himself testified that he interacted with the victims without any inappropriate behavior.

The trial included a range of testimonies, evidence, and conflicting statements. The victims' allegations were supported by testimonies, their accounts to family and a friend, and cellphone records, while the defense aimed to cast doubt on their credibility and the seriousness of the events.

---

[3] Detective Lieutenant Robert Garofalo, employed by the St. Bernard Parish Sheriff's Office, testified that he conducted forensic extractions of the two victims' cell phones. Sgt. Alphonso provided testimony regarding the evidence obtained from the victims' cell phones. The Younger Sibling's cell phone information corroborated that she had informed Defendant's wife about Defendant improperly touching her. The Older Sibling's cell phone information reflected a conversation with her friend in which she told her friend that she finally told someone what Defendant had done to her because he had done something similar to her younger sister. Further, the information reflected the notes that the Older Sibling made following the attempted rape by Defendant on July 23, 2016.

Defendant alleges the following errors:

1. The verdict was contrary to the law and evidence.

2. The district court erred in denying Defendant's motion for new trial.

3. Defendant was denied a fair trial by the district court's failure to present proper responsive verdicts to the jury.

4. The verdicts rendered were ambiguous in nature.

5. The district court improperly allowed the publication of evidence during the State's closing argument.

6. The imposed sentences of six years in connection with Defendant's sexual battery conviction and ten years in connection with Defendant's attempted third degree rape conviction were unconstitutionally excessive.

7. The district court erred in denying his motion to reconsider sentence.

## DISCUSSION

**Error Patent**

A review of the record reveals a single possible error patent. At the beginning of the sentencing hearing, defense counsel orally moved for a new trial; the district court denied the motion and shortly thereafter sentenced Defendant. La. C.Cr.P. art. 873 requires a twenty-four hour delay between the denial of a motion for new trial and sentencing. However, La. C.Cr.P. art. 852 requires a motion for new trial be in writing. Where a motion does not comply with La. C.Cr.P. art. 852, the trial court does not err in sentencing defendant immediately. *State v. Davis*, 00-278, p. 19 (La. App. 5 Cir. 8/29/00), 768 So.2d 201, 214. *Cf. State v. Lewis*, 99-3150, p. 6 (La. App. 4 Cir. 2/14/01), 781 So.2d 650, 653 (concluding that the trial court did not err in failing to rule on an oral motion for new trial before sentencing the defendant). We find that the district trial court in this case was not required to wait because the motion for new trial was not in writing.

**Sufficiency of the Evidence**

Defendant argues that the evidence produced against him at trial was insufficient to support his conviction for attempted third degree rape. More particularly, he contends that the State failed to prove his identity as the perpetrator beyond a reasonable doubt. In support of this argument, Defendant asserts that the victim of the attempted third degree rape did not positively identify him at trial as the perpetrator. We address this assignment of error first.[4]

When, as in this case, the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067, p. 18 (La. 4/24/06), 931 So.2d 297, 311; *State v. Neal*, 00-0674, p. 11 (La. 6/29/01), 796 So.2d 649, 658. However, positive identification by only one witness is sufficient to support a conviction. *Id.* The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and credibility will not be reweighed on appeal. *Neal*, 00-0674, p. 11, 796 So.2d at 658; *Weary*, 03-3067, pp. 19-20, 931 So.2d at 311-12. A reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. *Id.*

---

[4] When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). As the Louisiana Supreme Court has explained, "[t]he reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)." *Hearold*, 603 So.2d at 734. Such an acquittal would necessarily prevent any retrial. *See State v. Gaines*, 96-1850, p. 4 (La. App. 4 Cir. 1/29/97), 688 So.2d 679, 682) (observing that "[a]lthough [the defendant's] conviction must be reversed on other grounds, the issue of sufficiency of evidence must be addressed" because "if there was insufficient evidence even in the face of an error so prejudicial as to warrant a new trial, then there can be no new trial"). Thus, the Supreme Court has held that an appellate court's failure to address the sufficiency of the evidence, when raised, is error. *See State v. Morris*, 615 So.2d 327, 328 (La. 1993) (observing that "the court of appeal erred in pretermitting relator's contention that the evidence was insufficient to prove the validity of [his] earlier convictions, which [were] an essential element of the charged crime").

The record reflects that the Older Sibling, the victim of the attempted rape, did identify Defendant at trial. During direct examination, the prosecutor asked her why she was upset when she was talking to her younger sibling after the 2018 sexual battery of her by Defendant. The Older Sibling testified as follows:

> A. Because it had happened again and happened to someone I love and someone really really close to me. And it was the same person that did it.
>
> Q. Who is that?
>
> A. Kevin.
>
> Q. Is he in the courtroom?
>
> A. Yes.
>
> Q. Where is he?
>
> A. (Indicating.)

After the State concluded the presentation of its case-in-chief, Defendant moved for a directed verdict on the attempted third-degree rape count on the basis that the victim did not identify Defendant as the perpetrator. The following exchange between counsel and the court occurred:

> DEFENSE COUNSEL:
> Yesterday, on the second count involving [the attempted rape], she never did identify Mr. Rickmon. As a result, we are going to move for a directed verdict, as it relates to that particular count.
>
> PROSECUTOR:
> They're saying [she] didn't identify the victim (sic)?
>
> DEFENSE COUNSEL:
> I think if you check the court records, check the transcript, she never identified Mr. Rickmon.
>
> PROSECUTOR:
> Yes, Judge. She pointed to him.
>
> DEFENSE COUNSEL:

7

Judge, if you look at that record and check the record, there is nothing in that record that would show that she identified him, nor did counsel reflect that she pointed to Mr. Rickmon. It was never done. It never happened.

PROSECUTOR:
Judge, an ID does not have to be established by a witness pointing to the person like it's out of a movie. The fact finder can establish ID for themselves in a number of ways. It is not an error.

DEFENSE CO-COUNSEL:
I believe [she] was asked, "Do you see Kevin in court"? She said, "Yes." But she was never asked to identify him. She was not asked to say where he was seated. She was not asked to describe what he was wearing, nor did the State say, "Let the record reflect that the witness has identified the defendant, Kevin Rickmon," in any way, shape, or form.

PROSECUTOR:
Judge, this is specious.

THE COURT:
I recall that testimony. . . . I don't think it was said, "Let the record reflect." But the record does reflect the identification. So the Court is going to deny the directed verdict.

We find that the victim's pointing to Defendant immediately after she identified him by his first name as the perpetrator and stated that he was in the courtroom was sufficient to establish his identity. *See generally State v. Atkins*, 46,613, p. 3 (La. App. 2 Cir. 9/21/11), 74 So.3d 238, 240 (witnesses pointing to the defendant at trial in the presence of the jury was sufficient to establish the defendant's identification). We note that in addition to pointing Defendant out in court, the victim referred to Defendant throughout her testimony as the person who attempted to rape her.

After careful review, we find that the evidence negates any reasonable probability of misidentification and supports the jury's finding of guilt. We are

8

convinced that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that Defendant was the perpetrator of the attempted third degree rape. Thus, we find no merit in this assignment of error.

**Venue**

Defendant argues that the State failed to establish that the 2016 attempted third degree rape occurred in St. Bernard Parish, where the trial was held, and, as such, the district court lacked jurisdiction over the charge of attempted third degree rape. In support this argument, Defendant asserts that no evidence was presented at trial showing that, at the time the offense was allegedly committed, his home, which the victim identified as the situs of the rape attempt, was located in St. Bernard Parish.

La. Const. art. I, § 16 requires that every person charged with a crime has the right to an impartial trial "in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law." La. C.Cr.P. art. 611(A) provides in pertinent part: "All trials shall take place in the parish where the offense has been committed, unless the venue is changed."

Louisiana Code of Criminal Procedure Article 615 provides that any allegation of improper venue must be raised in advance of trial by a motion to quash and that "[v]enue shall not be considered an essential element to be proven by the state at trial." A defendant must raise the issue of venue before trial by a motion to quash or the issue is waived. *State v. Pierre*, 04-0010, p. 3 (La. App. 4 Cir. 2/25/04), 869 So.2d 246, 248

In *State v. Atkins*, 360 So.2d 1341 (La. 1978), the Supreme Court held that "even in the absence of a motion to quash for improper venue, the State must prove

9

proper venue at trial beyond a reasonable doubt." *Id.*, 360 So.2d at 1344 (citing La. C.Cr.P. art. 615; *State v. Frank*, 355 So.2d 912, 914 (La. 1978); *State v. Dillon*, 260 La. 215, 219-20, 255 So.2d 745, 747 (1971)). The *Atkins* court explained:

> While [an appellate court] may not weigh for sufficiency the State's evidence as to venue, when the jury has determined the issue adversely to the defendant by a verdict of guilty, [the appellate court] may, provided that the issue is presented by the defendant's motion for a new trial, grant relief if there was no evidence whatsoever as to the proper venue.

*Atkins*, 360 So.2d at 1344 (citing *State v. Dillon*, 260 La. at 220, 255 So.2d at 747; *State v. Richard*, 245 La. 465, 477, 158 So.2d 828, 832 (1963)).

Here, Defendant made an oral motion for new trial. In his oral motion for a new trial, Defendant alleged the verdict was contrary to the law and the evidence. Louisiana Code Criminal Procedure Article 852 provides, in pertinent part, that "[a] motion for a new trial shall be in writing[.]" Therefore, a claim of insufficiency of the evidence to support venue over the attempted third degree rape count via the oral motion was not preserved for review by this Court. *State v. Hodde*, 15-455 (La. App. 3 Cir. 11/4/15) 2015 WL 6736192, *1 (citing *State v. Ballom*, 96-1443, p. 2 (La. App. 4 Cir. 7/3/96), 678 So.2d 53, 54) (other citation omitted).

**Simple Battery as a Responsive Verdict to Sexual Battery**

Defendant next claims that he was denied a fair trial as a result of the district court's failure to instruct the jury, in connection with the sexual battery charge lodged against him, that it could find him guilty of the responsive verdict of simple battery. For the reasons that follow, we reject this claim.

La. C.Cr.P. art. 814 provides the only responsive verdicts which may be rendered where the indictment charges certain listed offenses. *State v. Vincent*, 387

So.2d 1097, 1099 (La. 1980). The crime of sexual battery is not listed therein. La. C.Cr.P. art. 815 provides:

> In all cases not provided for in Article 814, the following verdicts are responsive:
>
> (1) Guilty;
>
> (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
>
> (3) Not Guilty.

"[A] lesser offense is included in the charge of a greater offense (and therefore responsive) if all of the elements of the lesser crime are included in the definition of the greater offense." *State v. Vargas-Alcerreca*, 12-1070, p. 21 (La. App. 4 Cir. 10/2/13), 126 So.3d 569, 581 (quoting *State v. Turnbull*, 377 So.2d 72, 76 (La. 1979)).

The Criminal Code defines battery in relevant part as "the intentional use of force or violence upon the person of another." La. R.S. 14:33. Simple battery is "a battery committed without the consent of the victim." La. R.S. 14:35. Sexual battery is defined in La. R.S. 14:43.1, in pertinent part, as follows:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:
>
> (1) The offender acts without the consent of the victim.

Defendant argues that every element of simple battery is included in the offense of sexual battery and that therefore, simple battery is a responsive verdict

to sexual battery. We do not decide this issue, however, since the issue was not preserved for appellate review.[5]

La. C.Cr. P. art. 841 provides, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose of the requirement of a contemporaneous objection is to put the trial judge on notice of an alleged irregularity so that he may cure a legitimate problem and prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. *State v. Vernon*, 16-0692, p. 8 (La. App. 4 Cir. 12/21/16), 207 So.3d 525, 529. For instance, La. C.Cr.P. art. 801(C) provides that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." The Supreme Court has instructed that "alleged error concerning the sufficiency of the list of responsive verdicts given the jury, like error in the judge's charge to the jury, is not reviewable under Art. 920(2) and may not be considered unless objection is made in the trial court in time for the trial judge to correct the error." *State v. Craddock*, 307 So.2d 342, 343 (La. 1975); *see also State v. Bauman*, 17-0659, pp. 15-16 (La. App. 4 Cir. 12/20/17), 234 So.3d 1028, 1038-39. Where a party fails to either request inclusion of a responsive verdict or object

---

[5] Furthermore, current jurisprudence does not support Defendant's argument that simple battery is a responsive verdict to the charge of sexual battery. In *State v. Trackling*, 04-3222 (La. 1/19/06), 921 So.2d 79, the Supreme Court considered the issue of whether attempted sexual battery was a valid crime, and engaged in an in-depth discussion of the sexual battery statute. The Supreme Court rejected the classification of simple battery as a responsive verdict of sexual battery. *Trackling*, 04-3222, pp. 6-9, 921 So.2d at 83-84. Adopting the rationale of *Trackling*, the First Circuit specifically found that simple battery was not a responsive verdict to the crime of sexual battery. *State v. Lilly*, 12-0008, p. 22 (La. App. 1 Cir. 9/21/12), 111 So.3d 45, 60. *But see State v. Tauriac*, 01-1565, p. 3 (La. App. 3 Cir. 4/3/02), 813 So.2d 1187, 1189 (in a pre-*Trackling* case, the court, in order to affirm the defendant's simple battery conviction in a case where the defendant was charged with sexual battery, found that "simple battery is a lesser and included offense of the crime of sexual battery").

to its exclusion, the party has waived the issue for appeal. *See State v. Neville*, 96-0137, pp. 6-7 (La. App. 4 Cir. 5/21/97), 695 So.2d 534, 538) (defendant's failure to request inclusion of responsive verdict or to object to its omission from the verdict sheet precludes appellate review of the issue); *State v. Wall*, 21-716, p. 1 (La. App. 5 Cir. 12/7/22), 362 So.3d 847, 849 (footnote omitted) ("Because we find that defendant failed to request the responsive verdict or to object to the exclusion of the responsive verdict …, we find that defendant has waived the issue for appeal.").

The record in this case shows that after the presentation of all evidence and arguments, a jury charge conference was held, at which counsel for both parties were provided a copy of the proposed jury instructions. Counsel for Defendant acknowledged that he reviewed the jury instructions and stated that he had no objection to the proposed instructions. The district judge subsequently instructed the jury that, as to the offense of sexual battery, it could find Defendant guilty as charged, guilty of attempted sexual battery, or not guilty. Defense counsel did not object to that charge. Accordingly, we find that Defendant has waived his argument on appeal that the district court's failure to include simple battery among the responsive verdicts to sexual battery available to the jury was reversible error.

**Ambiguity of Jury Polling Slips**

Defendant argues that the written polling of the jury was unclear, as there was no specification as to which count the jurors were being polled on. Defendant notes that the polling did not request each member of the jury to answer yes or no as to the verdict on each count.

At the outset, we note that our law does not require jury polling in criminal cases, although it allows both the defense and the State to request that the jury be polled. *See* La. C.Cr.P. art. 812.[6]

In the case *sub judice*, the jury was polled, and the record reflects the unanimity of the jury's verdicts. After both verdicts were read, the judge directed the clerk to poll the jury in writing. Each juror was provided a polling slip which asked, "Is this your verdict?" After the jurors completed the polling slips, the clerk collected the slips and then read aloud the name and response given by each individual juror. Each juror responded either "yes" or "guilty." Upon completion of the polling process, the judge certified the verdicts as legal.

There was no request for individualized polling on each count. Further, there was no objection to the polling procedure utilized by the district court. As

---

[6] La. C.Cr.P. art. 812 provides as follows:

> A. The court shall order the clerk to poll the jury if requested by the state or the defendant. The poll shall be conducted in writing by applying the procedures of this Article, and shall be done in open court.
>
> B. (1) The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results.
>
> (2) If a sufficient number of jurors as required by law to reach a verdict answer "yes" the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes," the court may remand the jury for further deliberation, or the court may declare a mistrial in accordance with Article 775. The polling slips may be placed under seal upon order of the court, which shall state the specific reasons for placing the polling slips under seal. If so ordered the polling slips shall not be released to the public without a subsequent order of the court authorizing their release. If the court orders the release of the polling slips, the names of the jurors shall be redacted.

Defendant failed to make a contemporaneous objection to the polling procedure, he cannot raise this issue for the first time on appeal. *See* La. C.Cr.P. art. 841(A); *State v. Bernard*, 02-1644, p. 7 (La. App. 4 Cir. 4/2/03), 844 So.2d 1001, 1005; *State v. Amato*, 96-0606, p. 23 (La. App. 1 Cir. 6/30/97), 698 So.2d 972, 988; *State v. Alexander*, 21-1346, p. 24 (La. App. 1 Cir. 7/13/22), 344 So.3d 705, 724.

Defendant argues that the alleged error in the polling procedure is an error patent, and, as such, an objection to the procedure utilized to poll the jury was not required. Defendant cites *State v. Norman*, 20-00109 (La. 7/2/20), 297 So.3d 738, and *State v. Robinson*, 21-0254 (La. App. 4 Cir. 2/18/22), 336 So.3d 567, *writ denied*, 22-00437 (La. 5/24/22), 338 So.3d 1185, in support of his argument.

In *Norman*, the record showed that the district court ceased polling the jurors after the first ten jurors. 20-00109, p. 1, 297 So.3d at 738-39. Hence, it was not known whether the verdict was unanimous. The Supreme Court remanded the matter to the district court "to conduct further proceedings to ascertain whether the verdict was unanimous" and to "provide a *per curiam . . .* within ten days of ruling on the *Ramos* issue and stating the outcome." 20-00109, p. 1, 297 So.3d at 739. Similarly, in *Robinson*, the record was devoid of jury polling slips or any other indication of the verdict's unanimity. 21-0254, p. 33, 336 So.3d at 586. Thus, pursuant to *Norman*, this Court remanded the matter to the district court to "clarify[] the record on the crucial issue of whether the jury's verdicts were unanimous." *Id*.

This Court had occasion to apply *Norman* and *Robinson* in *State v. Lamizana*, 21-0409 (La. App. 4 Cir. 3/23/22), --- So.3d ----, 2022 WL 869670. In *Lamizana*, the record showed that polling was not requested; therefore, the jury was not polled. 21-0409, p. 7, --- So.3d ----, ----, 2022 WL 869670, *4. Pursuant to

15

*Norman* and *Robinson*, the Court remanded the matter to the district court "to clarify the record on the crucial issue of whether the jury's verdicts were unanimous." 21-0409, p. 8, --- So.3d ----, ----2022 WL 869670, *4.

*Norman*, *Robinson*, and *Lamizana* are easily distinguished from the case *sub judice.* Here, the jury was polled, and the record reflects the unanimity of the jury's verdicts. We find no merit in Defendant's argument.

**Publication of Evidence During Closing Argument**

In this assignment of error, Defendant argues that the district court erred in allowing the State to publish evidence, namely the cell phone records of the two victims, to the jury "for the first time" during its closing argument. The cell phone records had previously been admitted as State's exhibits A and B.

Defendant cites La. C.Cr.P. art. 765 in support of his argument that a party may not publish previously admitted evidence to the jury for the first time during closing argument. La. C.Cr.P. art. 765, which provides for the normal order of trial, states, in pertinent part, as follows:

> The normal order of trial shall be as follows:
>
> (1) The selection and swearing of the jury;
>
> (2) The reading of the indictment;
>
> (3) The reading of the defendant's plea on arraignment;
>
> (4) The opening statements of the state and of the defendant;
>
> (5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;
>
> (6) The argument of the state, the defendant, and the state in rebuttal;

16

(7) The court's charge;

(8) The announcement of the verdict or mistrial in jury cases, or of the judgment in nonjury cases; and

(9) The discharge of the jury in jury cases.

Defendant asserts that La. C.Cr.P. art. 765(5) prohibits the publication of evidence for the first time during closing argument. We disagree. Subparagraph 5 provides the order of "[t]he presentation of the evidence" by the parties and allows the trial court, in its discretion, to "permit the *introduction* of *additional* evidence prior to argument." Subparagraph 5 does not govern the publication of previously admitted evidence to the jury during closing argument.

In *State v. Rowell*, 306 So.2d 668 (La. 1975), the Supreme Court found no error in a procedure whereby the jury was allowed to examine, during closing argument, evidence which had previously been admitted but which had not been examined by the jury at that time. Defendant's reliance on La. C.Cr.P. art. 765 is unfounded.

Further, in this case, as the colloquy reflects, the State was not attempting to introduce and publish additional evidence prior to argument. Instead, the State sought to publish evidence which had already been introduced and admitted. Further, the trial colloquy reflects that with regard to exhibits A and B, the only two exhibits which the State referenced in its closing argument, said exhibits had earlier been published to the jury. During direct questioning of Sgt. Alphonso, the State sought to publish both exhibits to the jury; they were published without objection. First, exhibit B:

> PROSECUTOR:
> Your Honor, at this time, I'm going to move to publish copies to the jury so they can follow along with this witness.

THE COURT:
Any objection?

DEFENSE COUNSEL:
One minute, Your Honor. No objection, Your Honor….

\*          \*          \*          \*

PROSECUTOR:
This is a full and complete copy for each juror of State's Exhibit B.

THE COURT:
All right. The Court will order that State's Exhibit B be published to the jury without objection.

Next, the State published exhibit A:

PROSECUTOR:
Judge, at this time I'm going to publish to the jury a copy of State's Exhibit A.

THE COURT:
Any objection?
DEFENSE COUNSEL:
No objection.

THE COURT:
The Court will order that the State (sic) Exhibit A be published to the jury.[7]

Additionally, Defendant claims he was prejudiced by the publication of the victims' phone records after he had rested his case. However, as reflected above, the phone records were published prior to the time Defendant had rested. Further, the only specific allegation to support his claim of prejudice is that "the defense engaged in an extremely limited examination of [Defendant's wife] regarding those phone [records]" and had Defendant known that the jury would view the

---

[7] We note that the Louisiana Supreme Court has held that re-examination of evidence by the jury during closing argument does not constitute error. *State v. Perry*, 420 So.2d 139, 150 (La. 1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); *State v. Atkins*, 360 So.2d 1341, 1348 (La. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). Thus, we find no error in permitting the prosecutor to again publish the victims' phone records to the jury during his closing argument.

phone records, "the defense strategy and witness examination would have taken a much different course."

A review of the cell phone records reflects relatively few text messages between the victims and Defendant's wife. Further, a comparison of exhibits A and B with the testimony of Sgt. Alphonso regarding the text messages exchanged between the victims and Defendant's wife, reflects that the jury *was* aware of the content of these text messages.

Sgt. Alphonso testified that after the victims told Defendant's wife what Defendant had done, Defendant's wife texted, "I'm so sorry"; "Do you want to talk about it?" Sgt. Alphonso stated that when the victims asked Defendant's wife if they should tell their mother, Defendant's wife responded, "No, don't tell mom." Thereafter, Sgt. Alphonso explained that based upon his review of the text messages between the victims and Defendant's wife, as set forth in exhibits A and B, Defendant's wife "was trying to get, like, a family meeting with the two girls, Defendant's wife, and [Defendant]. The girls refused. They didn't want to speak to [Defendant]."

Defendant claims he was prejudiced because exhibits A and B were not published until after the defense had rested because had he known that jurors were going to see the exhibits, defense counsel's examination of Defendant's wife regarding those text messages would have been more extensive. However, the premise of Defendant's claim of prejudice is faulty in that the exhibits were published prior to the time the defense rested. Further, based on Sgt. Alphonso's testimony, jurors were aware, before either party rested and before Defendant's wife offered testimony, of the content of the text messages. Thus, armed with this knowledge, nothing prevented Defendant from extensively questioning

19

Defendant's wife regarding the messages. Defendant's claim that he suffered prejudice in this regard is without merit.

**Excessive Sentences and Denial of Motion to Reconsider Sentence**

In his six and seventh assignments of error, respectively, Defendant asserts that the trial court erred when it imposed excessive sentences and when it denied Defendant's motion to reconsider sentence. These assignments will be addressed together because they encompass interrelated and corresponding questions of law.

Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to . . . excessive . . . punishment." "Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness." *State v. Smith*, 01-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. *State v. Bonanno*, 384 So.2d 355, 357 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Galindo*, 06-1090, pp. 15–16 (La. App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Cann*, 471 So.2d 701, 703 (La. 1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. *State v. Walker*, 00-3200, p. 2 (La. 10/12/01), 799 So.2d 461, 462.

In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. *State v. Wiltz*, 08-1441, p. 10 (La. App. 4 Cir. 12/16/09), 28 So.3d 554, 561. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. *State v. Bell*, 09-0588, p. 4 (La. App. 4 Cir. 10/14/09), 23 So.3d 981, 984.

As discussed above, Defendant was convicted of one count of sexual battery and one count of attempted third degree battery. La. R.S. 14:43.1(C)(1) provides that "[w]hoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years." La. R.S. 14:43(B) provides that "[w]hoever commits the crime of third degree rape shall be imprisoned at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years." La. R.S. 14:27(D)(3) provides that a person convicted of attempt "shall be . . . imprisoned . . . in the same manner as for the offense attempted" and "such . . . imprisonment shall not exceed . . . one-half of the longest term of imprisonment prescribed for the offense so attempted . . . ." Consequently, upon his conviction for attempted third degree rape, Defendant faced imprisonment for a term not more than twelve and a half years. Defendant received a six year sentence for sexual battery and a ten year sentence for attempted third degree rape. Accordingly, Defendant's sentences are within the statutory sentencing range.

At the sentencing hearing, the State presented victim impact evidence, consisting of the Older Sibling's testimony and the prosecutor reading a written statement prepared by the Younger Sibling. Defendant then addressed the court. In handing down the sentences, the district court stated that it considered many factors, including the evidence and circumstances of the crimes; the fact that both victims were juveniles; Defendant's "true" character, which the court described as "a predator and a danger to young girls;" the position of authority and trust held by Defendant; the emotional and psychological impact that the crimes have had and will continue to have on the victims and their family; and Defendant's refusal to take responsibility for his actions. The district court found that a lesser sentence would deprecate the seriousness of Defendant's crimes. The record indicates that the district court adequately considered the La. C.Cr.P. art. 894.1 sentencing factors when sentencing Defendant.

Next, we consider whether the sentence imposed is too severe in light of this particular defendant and the circumstances of his case. Defendant contends the sentence is excessive given his years of public service as a law enforcement officer and the fact that he had no criminal record or history of inappropriate behavior.

In sentencing Defendant, the district court considered Defendant's employment as a law enforcement officer; however, the district court found this to be an aggravating factor since Defendant's status as a law enforcement officer contributed to the position of power and trust he held vis-á-vis the victims. We do not believe the sentences imposed are too harsh under the circumstances. Defendant's sentence of six years for sexual battery was a mid-range sentence. While Defendant's ten-year sentence for attempted third degree rape was at the

upper end of the sentencing range, Defendant's conduct will have a lifetime effect upon the victim, not just a mere ten years.

The district court ordered the sentences in this case to run concurrently notwithstanding the fact that it is presumed that consecutive sentences are ordinarily appropriate for crimes, as in the instant case, that do not form part of the same transaction or series of transactions. *State v. Fruge*, 14-1172, p. 8 (La. 10/14/15), 179 So.3d 579, 584 (citing La. C.Cr.P. art. 883).[8] Had the sentences been ordered to be served consecutively, Defendant would be faced with a total sentence of sixteen years in prison instead of the ten years he must serve under the concurrent sentences imposed. The imposition of concurrent sentences resulted in a significant benefit to Defendant.

Further, Defendant's sentences are in line with similarly situated offenders. In *State v. Badeaux*, 01-0406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, maximum consecutive sentences for sexual battery and indecent behavior with a juvenile were upheld. The court noted the trial court's reliance on the factors of the severity of the crime, the vulnerability of the child victim, who was fourteen, and the use of the defendant's position as an adult neighbor to commit the offense. *Id.*, 01-0406, p. 7, 798 So.2d at 239. The court rejected the defendant's argument that his status

---

[8] La. C.Cr.P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

as a first felony offender with a history of mental illness should militate against the maximum sentences. *Id.*, 01-0406, pp. 8-10, 798 So.2d at 240.

In *State v. Hubb*, 97-304 (La. App. 5th Cir. 9/30/97), 700 So.2d 1103, the court held that sentences of six and one-half and seven years were not constitutionally excessive for two defendants who pled guilty to sexual battery and lived in the home with the ten and eleven-year-old female victims and their mother. The defendants "french" kissed both victims on several occasions. One defendant exposed his genitals to both children and forced one of the children to fondle him, and the other defendant attempted to make one of the children fondle him and showed the other child photographs of nude women. *Id.*, 97-304, p. 3, 700 So.2d at 1104-05. One of the defendants had no criminal history, and the other had only misdemeanor offenses. *Id.*, 97-304, p. 6, 700 So.2d at 1106. Nevertheless, under these factual circumstances, the sentences imposed were not an abuse of the trial judge's discretion. *Id.*

In *State v. Toups*, 546 So.2d 549 (La. App. 1st Cir. 1989), the defendant was sentenced to eight years for the sexual battery of a five-year-old child who was the daughter of his girlfriend. The child testified that he had touched her "private place" and forced her to rub his. *Id.*, 546 So.2d at 553. The appellate court found no abuse of discretion in sentencing even though the defendant was a first-felony offender, stating that the trial court noted that the nature of the offense was heinous. *Id.* Finally, in *State v. Galindo*, 06-1090, p. 22, 968 So.2d at 1116, this Court found that a six-year sentence for sexual battery was not excessive for a defendant with no criminal record.

We have not found a case challenging as excessive a sentence for attempted third degree rape. However, in *State v. Wagnon*, 18-446 (La. App. 3 Cir. 12/6/18),

261 So.3d 60, the defendant pled guilty to three counts of oral sexual battery of two fourteen-year-old boys and one count of third degree rape of one of the boys and was sentenced to seven years for each of the convictions for oral sexual battery and twenty years for third degree rape. The defendant argued that his sentences were excessive for a first felony offender who cooperated with authorities and gave a voluntary statement admitting the crimes. *Id.*, 18-446, p. 4, 261 So.3d at 64. The appellate court found no abuse of discretion in sentencing and affirmed the sentences. *Id.*, 18-446, pp. 9-10, 261 So.3d at 67.

In *State v. Despanie*, 06-1269 (La. App. 3 Cir. 2/7/07), 949 So.2d 1260, the appellate court found that a maximum, twenty-five year sentence imposed on a first offender who pleaded no contest to the simple rape of a ninety-two-year-old infirm female patient in a nursing home where he worked was not excessive. In *State v. Lott*, 41,426 (La. App. 2 Cir. 9/27/06), 940 So.2d 722, the court upheld a twenty-year sentence for a defendant who raped a mentally disabled male and whose criminal history was limited to a misdemeanor theft conviction.

Accordingly, we find that the sentences imposed on Defendant for sexual battery and attempted third degree rape are not too severe given Defendant's particular circumstances. Thus, because Defendant has failed to prove his sentences excessive, he cannot demonstrate that the district court erred in denying his motion to reconsider sentence. These assignments of error have no merit.

## CONCLUSION

For the foregoing reasons, we affirm Defendant's convictions and sentences.

**CONVICTIONS AND
SENTENCES AFFIRMED**

25